**LOBO RECORDING CORP., Plaintiff,**

v.

**WATERLAND and Vincent A. Van Haaff, Defendants.**

No. 98–CV7486.

United States District Court, E.D. New York.

Sept. 5, 2000.

Thaler & Gertler, LLP, Westbury, NY, by Harold Levy, of counsel, for Plaintiff.

Kent, Beatty & Gordon, New York City, by Michael B. Kent, of counsel, for Defendants.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

This diversity action involves allegations of breach of warranty, negligence, and fraud by the Plaintiff Lobo Recording Co. ("Lobo") against Defendant Waterland Design ("Waterland") and its owner Vincent Van Haaff, with regard to the design of a recording studio. Presently before the Court is the Defendants' motion to amend their answer to add additional counterclaims and interpose a third-party complaint.

### BACKGROUND

In August 1997, Lobo contacted Waterland and its owner, Van Haaff, to discuss the possibility of Waterland designing a recording studio for them and refurbishing two existing studios owned by Lobo. On September 20, 1997, Waterland submitted a set of design proposals for the renovation of several existing recording studios and the construction of a new "Studio A" in a building owned by Lobo in Deer Park, New York.

Lobo commenced construction of Studio A according to Waterland's plans in April 1998. According to the complaint, "construction and project management were under the control and supervision of Waterland and Van Haaff." At some point, problems arose with the construction that gave rise to the instant lawsuit.

According to Lobo, Waterland's plans were insufficiently detailed to construct the studios; the plans were not in compliance with building code provisions; and they failed to include conduits for wiring suitable to meet Lobo's needs, among other things. Lobo alleges that, because of the defective construction, it was required to destroy and rebuild all three studios, and has incurred more than a million dollars in damages and lost profits. On December 4, 1998, Lobo commenced this action against Waterland and Van Haaff, claiming breach of contract, breach of warranty, and negligence.

On March 3, 1999, Waterland and Van Haaff filed an answer denying Lobo's accusations and alleging numerous counterclaims. According to the Defendants, during the initial planning stages of the project, they advised Lobo that construction of the studios would require numerous professionals, including architects, structural engineers, electrical engineers, and air conditioning engineers specifically experienced in the construction of recording studios. Lobo instead retained contractors and architects with no experience working on studios, and who were therefore unable to carry out the plans designed by Waterland. In addition, the Defendants contend that Lobo began construction before full technical details could be obtained; Lobo caused certain construction tasks to be performed out of sequence; and Lobo refused to spend additional money to remedy the problems as per Van Haaff's suggestions. The Defendants raised counterclaims for monies due and ow-

ing in the sum of $39,000 plus interest; for an account stated; and based on *quantum meruit*. In addition, the Defendants alleged that Lobo was advertising its studios as being designed by Van Haaff and Waterland, even though the completed studios, although originally based on Van Haaff's designs, are inferior to Waterland's standards. Accordingly, the Defendants also raised counterclaims under the Lanham Act; for dilution of trademark under N.Y. Gen. Business Law § 368–d; for common law unfair competition; and for wrongful use of Van Haaff's name under the New York Civil Rights Law § 50.

After issue was joined, the parties proceeded to discovery, including depositions of Van Haaff and Lobo's President, Carlos Aviles. On November 10, 1999, Lobo filed an amended complaint, adding a cause of action for fraud on the grounds that Van Haaff held himself out as an architect and Waterland as an "architectural design company" when, in fact, Van Haaff was not an architect. Lobo also added a cause of action seeking a refund of fees paid to the Defendants on the ground that Van Haaff, not being an architect, was not permitted to charge for architectural services. On January 18, 2000, the Defendants filed an answer to the amended complaint, including only their original counterclaims.

On March 2, 2000, the Defendants filed the instant motion to amend their answer to add additional counterclaims and a third-party complaint against Aviles, Lobo's President. The proposed counterclaims and third-party complaint allege that Van Haaff's studio designs constitute "trade secrets," and that Lobo and Aviles misappropriated those trade secrets by providing them to "third-party competitors" of the Defendants who had been hired by Lobo as "replacement studio designer[s]" without Van Haaff's or Waterland's permission. The proposed counterclaims and third-party complaint allege misappropriation of trade secrets; direct and contributory copyright infringement; and common law copyright infringement relating to Lobo and Aviles turning over the plans to these third-parties.

On April 14, 2000, shortly after briefing had been completed on the Defendants' mo-

tion, United States Magistrate Judge Michael Orenstein certified discovery as complete, pending the Court's determination of the motion. Judge Orenstein indicated that if the motion was denied, the case would be ready for trial, but if the Defendants' motion was granted, the Plaintiff could seek to reopen discovery on the new counterclaims.

## DISCUSSION

Because the Defendants wish to add counterclaims, the provisions of Fed. R. Civ. P. 13 come into play. Rule 13(a) requires a defendant serving an answer to plead any counterclaims "aris[ing] out of the transaction or occurrence that is the subject of the opposing party's claim" that the party knows about. Here, at the time the Defendants filed their answer to the amended complaint on January 18, 2000, they were already aware of the facts giving rise to the proposed "trade secrets counterclaims," since they admit they learned of those facts at the deposition of Jeff Glixman, Lobo's manager, in November 1999. The Defendants do not deny that the trade secrets counterclaims arise out of the same transaction as Lobo's complaint; indeed the Defendants allege that the two matters are inextricably entwined. Therefore, the Defendants' failure to assert these counterclaims in its January 18, 2000 answer to the amended complaint requires treating the instant motion as one under Rule 13(f) to excuse the omission of a compulsory counterclaim. Rule 13(f) states that "[w]hen a pleader fails to set up a counterclaim through oversight, inadvertence, or excusable neglect, or when justice requires the pleader may by leave of court set up the counterclaim by amendment."

Rule 13(f) is to be read in conjunction with Fed. R. Civ. P. 15(a), *Resorts and Motel Advancement Development Agency v. Sloan*, 160 F.R.D. 449, 451 (S.D.N.Y.1995); *Gabourel v. Bouchard Transp. Co.*, 901 F.Supp. 142, 144 (S.D.N.Y.1995), which provides that "leave [to amend a pleading] shall be freely given when justice so requires." *Monahan v. New York City Dept. of Corrections*, 214 F.3d 275, 283 (2d Cir. 2000), citing *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). However, denial

of a Rule 15(a) motion may be appropriate where the proposed amendment is evidenced by undue delay, bad faith or dilatory motive on the part of the movant, undue prejudice to the opposing party, or futility. *Id.* The Court has discretion to deny an amendment where the motion is made after an inordinate delay, no satisfactory explanation is made for the delay, and the amendment would prejudice the defendant. *MacDraw, Inc. v. CIT Group Equipment Financing, Inc.*, 157 F.3d 956, 962 (2d Cir.1998). The burden to explain a delay is on the party that seeks leave to amend. *Id., citing Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 72 (2d Cir.1990).

■ Here, the Defendants admit that they first had some knowledge that Lobo had turned over the Waterland plans to Waterland's competitors as early as "mid-1999." The Defendants admit that

> [a]lthough certain documents turned over to defendants in mid-1999 showed that an English competitor, Munro Associates, and its Massachusetts-based agent, Professional Audio Design, Inc., had been brought in to complete the studios, and suggested that they had seen at least some aspect of the multi-page set of the proprietary Waterland plans, the scope of the wrongdoing was hardly evident.

However, this admission forms the core of the proposed counterclaims: that "at various times in 1998 and 1999, all, or critical portions, of the Waterland plans, in un-redacted form, were wrongfully given by plaintiff to the third-party competitors without prior notice to, and without the consent of defendants." Moreover, even assuming that evidence that Lobo had allowed a specific competitor of Waterland to see "at least some aspect" of the plans, the Defendants acknowledge that the full scope of the trade secrets counterclaim was revealed during the deposition of Jeff Glixman at some unspecified time in November 1999, yet not alleged in their answer to the amended complaint on January 18, 2000.

The Defendants do not offer any excuse for this delay, except to imply that they were not aware that new counterclaims could be asserted in response to an amended complaint. There is ample authority demonstrating that amending a complaint to allege new causes of action, as Lobo did here, constitutes a basis for asserting new counterclaims, *Synermed International Inc. v. Laboratory Corp. of America Holdings*, 1999 WL 1939253 (M.D.N.C.1999), *citing Tralon Corp. v. Cedarapids, Inc.*, 966 F.Supp. 812, 832 (N.D.Iowa 1997) *and Brown v. E.F. Hutton & Co., Inc.*, 610 F.Supp. 76, 78 (S.D.Fla. 1985); 3 James W. Moore, et al., Moore's Federal Practice, § 15.17[6] (3d ed.1997) ("when a plaintiff's amended complaint changes the theory of the case, it would be inequitable to require leave of court before the defendant could respond with appropriate counterclaims"). There are also cases that suggest that, at least in some circumstances, a party may not assert a new counterclaims in response to an amended complaint without seeking leave of the court. *Refuse Fuels, Inc. v. National Union Fire Ins. Co. of Pittsburgh*, 139 F.R.D. 576, 578 (D.Mass.1991), *citing Chrysler Corp. v. Fedders Corp.*, 540 F.Supp. 706, 712–13 (S.D.N.Y.1982). In light of the unclear authority, the Court finds that the Defendants could have had a reasonable belief that filing the proposed trade secret counterclaims in the January 18, 2000 answer to the amended complaint was based on a non-frivolous interpretation of existing law and consistent with Rule 11. Accordingly, the Court finds that the Defendants present motion to assert the trade secret counterclaims is the result of anywhere from two to six months of unexplained delay, during which time, an answer was interposed by the Defendants without attempting to add the counterclaims at issue.

Moreover, the Court finds that granting the proposed amendments would delay the case. Pursuant to Judge Orenstein's April 14, 2000 order, the case is currently ready for trial. However, Judge Orenstein has also held that, if the Defendants' amendment is granted, Lobo may be permitted to seek further discovery. The Court notes that this case has been pending for nearly two full years, and is reluctant to delay the matter several additional months to permit more discovery to be taken.

Nevertheless, the Court finds no undue prejudice resulting to Lobo if the Defendants

are permitted to add the new counterclaims. While Lobo will be required to undertake additional discovery in this case if the new counterclaims are added, no prejudice results since the proposed new counterclaims could always be brought by the Defendants in a new lawsuit in which Lobo would have to pursue the exact same discovery in any event. If anything, permitting the new claims to be added in this action actually relieves Lobo from a few obligations that it would have were the proposed counterclaims brought in a new action, such as the submission of new automatic disclosures under Rule 26(a). Moreover, the Court finds that the efficiency to the Court and the parties of trying all related claims in one proceeding works to the benefit of Lobo, because all of the claims by the various parties can be resolved in one trial instead of two.

### CONCLUSION

For the foregoing reasons, the Defendants' motion is therefore GRANTED. However, given the advanced age of this case and the fact that, other than the new counterclaims, discovery is complete and the case is trial-ready, the Court finds that an accelerated discovery schedule is appropriate. The Defendants have indicated that they require no additional discovery on the new counterclaims. Thus, discovery is reopened for Lobo and Third-Party Defendant Aviles only, for a period of 60 days from the date of this order. The parties shall appear before this Court at 9:00 a.m., November 20, 2000 to select a jury.

**SO ORDERED.**