2010 ND 68

**Eunice DAVIDSON, John Chaske, Oliver Gourd, Renita Delorme, Lavonne Alberts, Frank Blackcloud, Demus McDonald, Alex Yanton, Members, Committee for Understanding and Respect, Plaintiffs and Appellants**

v.

**STATE of North Dakota, by and through the NORTH DAKOTA STATE BOARD OF HIGHER EDUCATION, Defendant and Appellee.**

No. 20100022.

Supreme Court of North Dakota.

April 8, 2010.

Lolita G. Hartl Romanick (argued), Patrick Robert Morley (on brief), and Bradley John Beehler (on brief), Grand Forks, N.D., for plaintiffs and appellants.

Douglas Alan Bahr, Solicitor General, Office of Attorney General, Bismarck, N.D., for defendant and appellee.

SANDSTROM, Justice.

[¶ 1] Eight members of the Committee for Understanding and Respect ("plaintiffs") appeal from a district court judgment dismissing their action against the State Board of Higher Education to enforce a settlement agreement in a prior lawsuit by the University of North Dakota ("UND") and the Board against the National Collegiate Athletic Association ("NCAA") and to enjoin the Board from

shortening the time period for the Spirit Lake Tribe and the Standing Rock Sioux Tribe to consider approving or rejecting UND's use of the "Fighting Sioux" nickname and logo. Because we conclude the district court did not err in interpreting the language of the settlement agreement, we affirm.

I

[¶ 2] In August 2005, the NCAA adopted a policy prohibiting member institutions from using or displaying hostile and abusive racial or ethnic nicknames, mascots, or imagery at NCAA championship events. The policy prohibited identified member institutions from bidding and hosting NCAA championship events and from selling nickname, mascot, or imagery related merchandise at NCAA championship venues. The policy also urged member institutions to refrain from scheduling regular season games against institutions identified as subject to the policy. The NCAA identified UND and its Fighting Sioux nickname and logo as a member institution subject to the policy.

[¶ 3] In October 2006, the Board and UND sued the NCAA, challenging the NCAA's promulgation of the policy and its application of the policy to UND. In October 2007, the parties to that action executed a settlement agreement in which UND recognized the "North Dakota Sioux Tribes ... have important contributions in determining whether, to what extent and in what manner the 'Sioux' name and the 'Fighting Sioux' nickname or logo should continue to be used in conjunction with the athletic tradition at UND." The Board and UND agreed to dismiss their claims against the NCAA pertaining to the policy, and the NCAA agreed to provide UND "a period of time until November 30, 2010 (the 'Approval Period'), to seek and obtain namesake approval for its nickname and

related imagery, during which time the Policy will not apply to UND and UND will not be restricted from hosting and bidding to host championship events for which it otherwise would be eligible to host." The settlement agreement required UND to have "clear and affirmative support" for use of the nickname and logo from both the Spirit Lake Tribe and the Standing Rock Sioux Tribe and provided that if UND obtained tribal support within the approval period, the NCAA policy would not apply to UND unless either of the tribes withdrew or reversed its support for UND's use of the nickname and logo.

[¶ 4] The settlement agreement required UND to announce the "transition to a new nickname and logo which do not violate the Policy or render UND subject to the Policy, if [i] it is unable to secure namesake approval as set forth in this Agreement prior to the expiration of the Approval Period, or [ii] namesake approval, once provided, is withdrawn." The agreement said, "If UND does not adopt a new nickname and logo, or if the transition to a new nickname and logo is not completed prior to August 15, 2011, then UND will be returned to the list of institutions subject to the Policy." The agreement required UND to continue to solicit the views of the North Dakota Sioux Tribes on the appropriate use of the Sioux name and related imagery in UND athletics. The agreement also stated, "If UND announces a transition to a new nickname and logo at the end of the Approval Period, or at anytime during the Approval Period," the NCAA would remove UND from the list of institutions subject to the NCAA policy and UND would retain any intellectual property or licensing rights to the Fighting Sioux nickname and logo. The agreement required the NCAA to make a public announcement that it did not dispute UND "has indicated that it intends to use the

current name and logo with the utmost respect and dignity, and only for so long as it may do so with the support of the Native American community."

[¶ 5] In April 2009, the members of the Spirit Lake Tribe voted to allow UND to continue using the Fighting Sioux nickname and logo and the Spirit Lake Tribal Council thereafter adopted a resolution granting UND perpetual use of the nickname and logo beginning on October 1, 2009. In May 2009, the Board passed a resolution to retire the Fighting Sioux nickname and logo, effective October 1, 2009, with full retirement completed on August 1, 2010, unless both the Standing Rock Sioux Tribe and the Spirit Lake Tribe gave namesake approval consistent with the settlement agreement for a period of not less than 30 years. As of October 1, 2009, the Standing Rock Sioux Tribe had not voted either to approve or to disapprove UND's use of the nickname and logo.

[¶ 6] The plaintiffs, enrolled members of the Spirit Lake Tribe, thereafter sued the Board, alleging its proposed termination of the Fighting Sioux nickname and logo before November 30, 2010, violated the settlement agreement and seeking to enjoin the Board from terminating the nickname and logo before November 30, 2010. The plaintiffs claimed the settlement agreement precluded termination of the nickname and logo before November 30, 2010, and the Board was contractually bound to make a good-faith effort to obtain namesake approval from both tribes during that time. The district court granted the plaintiffs' ex parte motion for a temporary restraining order. Before answering the complaint, the Board moved to dismiss the plaintiffs' action and to vacate the temporary restraining order, arguing the plaintiffs lacked standing to challenge the settlement agreement and the Board had

authority to terminate the nickname and logo before November 30, 2010.

[¶ 7] After a hearing, the district court concluded the plaintiffs had standing to sue the Board. The court nevertheless dismissed the plaintiffs' complaint to enjoin the Board, concluding the settlement agreement was not ambiguous and the Board's decision to terminate the nickname and logo before November 30, 2010, did not violate the plain language of the agreement. The court explained there was "nothing in the Settlement Agreement which binds the Board to the continued use of the Fighting Sioux nickname or the pursuit of tribal namesake approval," and under the agreement, "the NCAA simply agreed that it would not enforce its Policy against UND during the Approval Period in order to allow the Board to make an effort to obtain namesake approval until November 30, 2010 if it so chose." The court explained there was nothing in the settlement agreement requiring UND to retain the nickname and logo and the language of the agreement contemplated transition to a new nickname and logo "at any time during the Approval Period." A judgment was entered dismissing the plaintiffs' complaint, and they appealed.

[¶ 8] The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 27–05–06. The plaintiffs' appeal is timely under N.D.R.App.P. 4(a). This Court has jurisdiction under N.D. Const. art. VI, §§ 2 and 6, and N.D.C.C. § 28–27–01.

II

[¶ 9] The Board argues the district court erred in deciding the plaintiffs have standing to enforce the settlement agreement. The Board claims the plaintiffs do not have standing because they are not parties to the settlement agreement and they are not intended third-party benefi-

ciaries of the agreement. The plaintiffs respond they are third-party beneficiaries of the agreement and they have standing.

[¶ 10] Under N.D.C.C. § 9–02–04, "[a] contract made expressly for the benefit of a third person may be enforced by that person at any time before the parties thereto rescind it." *See Apache Corp. v. MDU Res. Group*, 1999 ND 247, ¶¶ 1, 10–11, 603 N.W.2d 891 (affirming dismissal of plaintiffs' action because evidence and language of contract did not show parties expressly contracted for benefit of third party). Because the plaintiffs' status as third-party beneficiaries involves the interpretation of the language of the settlement agreement, we consider the district court's interpretation of that agreement in conjunction with this issue.

### III

■ [¶ 11] The Board moved to dismiss the plaintiffs' complaint before filing an answer. *See* N.D.R.Civ.P. 56(b) ("party against whom a claim ... is asserted ... may move, at any time, with or without supporting affidavits for a summary judgment in the party's favor"). The district court considered matters outside the pleadings, including video exhibits and testimony, in ruling on the Board's motion to dismiss and effectively treated the motion as one for summary judgment under N.D.R.Civ.P. 56. *See* N.D.R.Civ.P. 12(b) (stating if court considers matters outside the pleadings in deciding motion to dismiss for failure to state a claim upon which relief can be granted, motion must be treated as one for summary judgment under N.D.R.Civ.P. 56); *Livingood v. Meece*, 477 N.W.2d 183, 187 (N.D.1991) (discussing relationship between N.D.R.Civ.P. 12(b) and N.D.R.Civ.P. 56). Consequently, we review the plaintiffs' appeal under the standards for summary judgment, which is a procedural device for promptly resolving a controversy on the merits without a trial if there are no disputed issues of material fact and inferences that can reasonably be drawn from undisputed facts, or if the only issues to be resolved are questions of law. *Beckler v. Bismarck Pub. Sch. Dist.*, 2006 ND 58, ¶ 7, 711 N.W.2d 172.

[¶ 12] The plaintiffs argue the plain language of the settlement agreement delegated to the two Indian tribes the ultimate authority to determine usage of the Fighting Sioux nickname and logo. The plaintiffs claim the agreement gave the two tribes an opportunity to approve use of the nickname and logo until November 30, 2010, and the Board's decision to retire the nickname and logo before November 30, 2010, constitutes a breach of the settlement agreement. The Board counters that the settlement agreement does not require the Board to wait until November 30, 2010, to change UND's nickname and logo; rather, the Board asserts the agreement provided a grace period to secure tribal approval and does not require UND to continue using the nickname and logo during the approval period, or preclude the Board from exercising its constitutional and statutory authority to terminate use of the nickname and logo before November 30, 2010.

■ [¶ 13] The parties have postured their argument as an issue about contractual interpretation. When a settlement agreement is merged into a judgment, however, the agreement is interpreted and enforced as a final judgment and not as a separate contract. *Silbernagel v. Silbernagel*, 2007 ND 124, ¶ 10, 736 N.W.2d 441; *Thomas v. Stone*, 2006 ND 59, ¶ 11, 711 N.W.2d 199; *Sullivan v. Quist*, 506 N.W.2d 394, 399–400 (N.D.1993). Although the actual judgment dismissing the prior action by the Board and UND against the NCAA is not part of the record in this case, the order for judgment of

dismissal in that action is part of this record and says that "[e]ach of the claims set forth against [the NCAA] are dismissed with prejudice on the terms set forth in the Settlement Agreement, incorporated herein by reference." During oral argument to this Court, counsel for the Board stated the settlement agreement in the prior action was incorporated into the judgment in that action, and we interpret the language of the settlement agreement under the rules for interpreting a judgment, which mirror the rules for interpreting a contract. *See Slorby v. Slorby*, 2009 ND 11, ¶ 6, 760 N.W.2d 89 (district court's application of rules for interpreting contracts instead of rules for interpreting judgments was harmless because rules for interpreting judgments mirror rules for interpreting contracts); *Silbernagel*, at ¶ 10 (same).

[¶ 14]   In *Sullivan*, 506 N.W.2d at 401 (internal citations omitted) (quoting *Henry S. Grinde Corp. v. Klindworth*, 77 N.D. 597, 613–14, 44 N.W.2d 417, 427–28 (1950) (on petition for rehearing)), we outlined the general guidelines for interpreting a judgment:

> "The legal operation and effect of a judgment must be ascertained by a construction and interpretation of its terms, and this presents a question of law for the court.  If the language used in a judgment is ambiguous there is room for construction, but if the language employed is plain and unambiguous there is no room for construction or interpretation, and the effect thereof must be declared in the light of the literal meaning of the language used."  The judgment "should be so construed as to give effect to each and every part of it, and bring all the different parts into harmony as far as this can be done by fair and reasonable interpretation."  "A judgment, plain and unambiguous in its terms, may not be modified, enlarged, restricted, or diminished by reference to the" Findings of Fact.

[¶ 15]   The plaintiffs argue the clear intention of the settlement agreement, when read as a whole, is to give the two tribes a meaningful opportunity to demonstrate "clear and affirmative support" for the Fighting Sioux nickname and logo by precluding the Board from retiring the nickname and logo before November 30, 2010. The plaintiffs argue the Board's reliance on the phrase "at any time during the Approval Period" is contrary to and repugnant to the contracting parties' intent when the settlement agreement was executed.  The plaintiffs argue that phrase must be read in the context of the entire contract, which establishes a time frame for the two tribes to give approval for use of the nickname and logo until November 30, 2010.  They claim no language in the agreement gives the Board authority to retire the nickname and logo before November 30, 2010.

[¶ 16]   The Board responds the settlement agreement does not require the Board to wait until the end of the approval period to change the nickname and logo. The Board claims it did not agree to allow use of the nickname and logo until the end of the approval period and the plaintiffs' interpretation of the settlement agreement ignores the Board's constitutional and statutory role as the policymaking entity for North Dakota institutions of higher education.  The Board asserts the settlement agreement, when read as a whole, does not strip the Board of its constitutional and statutory authority and allows UND to transition to a new nickname and logo "at any time during the Approval Period."

[¶ 17]   Under N.D. Const. art. VIII, § 5, all North Dakota land grant universities and universities supported by a public tax shall remain under the absolute and

exclusive control of the State. The Board is the constitutionally established entity for the control and administration of state educational institutions, including UND. N.D. Const. art. VIII, § 6(1)(a). *See also* N.D.C.C. §§ 15–10–11 and 15–10–17. The purpose of the settlement agreement was to end a lawsuit by the Board and UND against the NCAA regarding the NCAA's promulgation of the policy for displaying hostile and abusive racial or ethnic nicknames, logos, and imagery and the NCAA's application of that policy to UND. The plain language of the settlement agreement does not restrict the Board's constitutional and statutory authority to change UND's nickname and logo, and we agree with the district court that nothing in the plain language of the settlement agreement limits the Board's constitutional and statutory authority, or requires the Board or UND to continue using the nickname and logo throughout the approval period. Neither does the settlement agreement require the Board and UND to change the nickname and logo. Rather, if UND does not obtain namesake approval from the two tribes, the Board and UND agreed to either change the nickname and logo, or be subjected to the NCAA policy.

[¶ 18] Under the plain language of the settlement agreement, the NCAA agreed not to apply the nickname policy to UND during the approval period, but the parties agreed the policy would apply to UND if it was unable to obtain namesake approval, or if namesake approval was withdrawn. The language of the settlement agreement provided UND with an approval period, but UND did not agree to continue using the Fighting Sioux nickname and logo throughout the approval period. Rather, the settlement agreement specifically states the NCAA agreed to remove UND from the list of institutions subject to the policy "[i]f UND announces a transition to a new nickname and logo at the end of the Approval Period, or at any time during the Approval Period." The agreement also specifically states the NCAA agreed that UND shall retain the intellectual property and licensing rights to the Fighting Sioux nickname "[i]f UND announces a transition to a new nickname and logo at the end of the Approval Period, or at any time during the Approval Period." That language plainly and unambiguously evidences the parties' contemporaneous intent that UND could "transition to a new nickname and logo at the end of the Approval Period, or at any time during the Approval Period." We reject the plaintiffs' argument that a more logical interpretation of that phrase only authorizes the Board to retire the nickname and logo before November 30, 2010, if either tribe expressly denied or withdrew approval for the nickname and logo before that date. The plaintiffs' interpretation is not supported by the plain language of the settlement agreement.

[¶ 19] Although the language of the settlement agreement recognizes the North Dakota Sioux Tribes have important contributions in determining whether the Fighting Sioux nickname and logo should be used by UND and the agreement requires UND to continue to solicit the views of the two tribes on the use of the nickname and logo, we do not construe that language to require UND to continue using the nickname and logo through November 30, 2010. That language must be harmonized with the language allowing UND to "transition to a new nickname and logo at the end of the Approval Period, or at any time during the Approval Period." Moreover, we agree with the district court that the language stating that UND "intends to use the current name and logo with the utmost respect and dignity, and only for so long as it may do so with the support of the Native American communi-

ty" is not a contractual agreement requiring UND to continue using the nickname through November 30, 2010. Rather, that language is a statement about the manner of UND's use of the Fighting Sioux nickname and logo and not an agreement by UND requiring it to continue using the nickname and logo, or to wait until November 30, 2010, to terminate the nickname and logo.

[¶ 20] We construe the language of the settlement agreement as a whole to allow UND to transition to a new nickname and logo at the end of the approval period, "or at any time during the Approval Period." We conclude the plain and unambiguous language of the settlement agreement, when construed as a whole and in conjunction with the Board's constitutional and statutory authority, does not require the Board or UND to continue using the Fighting Sioux nickname and logo until November 30, 2010. We therefore conclude the settlement agreement, when construed as a whole, does not delegate to the two tribes the ultimate authority to determine usage of the Fighting Sioux nickname and logo, or limit the Board's authority to terminate the nickname and logo before November 30, 2010.

[¶ 21] Because we construe the language of the settlement agreement to permit the Board to terminate UND's nickname and logo before November 30, 2010, it is not necessary to further consider the issue about the plaintiffs' standing. We have considered the remaining issues and arguments raised by the parties and find them to be either unnecessary to our decision or without merit.

IV

[¶ 22] We affirm the district court judgment.

[¶ 23] GERALD W. VANDE WALLE, C.J., CAROL RONNING KAPSNER and MARY MUEHLEN MARING, JJ., BENNY A. GRAFF, S.J., concur.

[¶ 24] The Honorable BENNY A. GRAFF, S.J., sitting in place of CROTHERS, J., disqualified.