2011 ND 63

**COLLECTION CENTER, INC.,**
Plaintiff and Appellee

v.

**Michael J. BYDAL, Defendant
and Appellant.**

No. 20100093.

Supreme Court of North Dakota.

March 22, 2011.

Michael J. Geiermann, Bismarck, N.D., for plaintiff and appellee.

Mark Andrew Grainger, East Grand Forks, MN, for defendant and appellant.

SANDSTROM, Justice.

[¶ 1] Michael Bydal appeals from a summary judgment awarding Collection Center, Inc. ("Collection Center") $129,958.15. We conclude Bydal failed to show the existence of genuine issues of material fact regarding Collection Center's assigned claims for contribution and the district court did not err in striking Bydal's amended counterclaim. We affirm.

I

[¶ 2] Bydal and William Reimer are shareholders in Eduit Corporation, a successor corporation to Technology Central, Inc. At all relevant times, Reimer was president of the corporations. Sometime between 2002 and 2003, Technology Central ceased operations and Eduit Corporation was formed to take over Technology

Central's business, including its assets and liabilities. At one time Steve Stremick was also a shareholder in Technology Central with Reimer and Bydal. In May 2003, Stremick withdrew from Technology Central.

[¶ 3] In June 2003, Security First Bank made a personal loan to Reimer and Bydal, as co-makers of a note for $200,941.15 with the stated purpose of this loan being to pay off debts of Technology Central. In July 2004, the Bank loaned Eduit Corporation $194,001.69, which was used to pay off five prior loans the Bank had made to Technology Central. The July 2004 loan was personally guaranteed by Reimer and Bydal, as co-guarantors. In June 2006, Reimer paid the Bank a $76,654.34 balance due on the June 2003 loan and a $127,568.57 balance due on the July 2004 loan. The Bank assigned its right, title, and interest in the notes to Reimer, and he subsequently assigned all his right, title, and interest in both loans to Collection Center, a collection agency.

[¶ 4] In September 2006, Collection Center sued Bydal to collect the debts Reimer had assigned to Collection Center. Bydal timely answered and counterclaimed for punitive damages, alleging Collection Center's complaint was without basis in law or fact, was brought to harass Bydal, was an abuse of process and malicious prosecution, and violated N.D.R.Civ.P. 11. Collection Center replied, denying the allegations in Bydal's counterclaim.

[¶ 5] In August 2008, Collection Center sought to amend its complaint against Bydal to allege two claims for contribution under N.D.C.C. § 9-01-08. Collection Center's amended complaint sought judgment against Bydal for one-half of the balances due on the two notes that Reimer had satisfied and assigned to Collection Center. The court granted Collection Center's motion to amend its complaint.

[¶ 6] Bydal thereafter filed an amended answer and an amended counterclaim. Bydal's amended counterclaim eliminated his claims for abuse of process and malicious prosecution, and his request for punitive damages. Instead, Bydal's amended counterclaim asserted Reimer had breached a duty of loyalty in that as president of the corporations, Reimer had breached his fiduciary duties to monitor, oversee, and supervise the business activities of the corporations. Bydal's amended counterclaim alleged that "[a]s a result of Reimer's breach of fiduciary duties, [Bydal] is entitled to the recovery of losses, including lost profits and costs and disbursements, the amount of which to be later determined." Bydal did not seek leave to amend his counterclaim.

[¶ 7] Collection Center moved for summary judgment and to strike Bydal's amended counterclaim. The district court granted Collection Center summary judgment on the contribution claims and also struck Bydal's counterclaim.

[¶ 8] The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 27-05-06. Bydal's appeal is timely under N.D.R.App.P. 4(a). This Court has jurisdiction under N.D. Const. art. VI, §§ 2 and 6, and N.D.C.C. § 28-27-01.

## II

[¶ 9] By summary judgment, the district court decided Collection Center's claims for contribution. Summary judgment is "a procedural device for promptly resolving a controversy on the merits without a trial if there are no disputed issues of material fact and inferences that can reasonably be drawn from undisputed facts, or if the only issues to be resolved are questions of law." *Davidson v. State*, 2010 ND 68, ¶ 11, 781 N.W.2d 72.

In an appeal from a summary judgment, we view the evidence in the light most favorable to the party opposing the motion and give that party the benefit of all favorable inferences that can be reasonably be drawn from the record. *Lucas v. Riverside Park Condos. Unit Owners Ass'n,* 2009 ND 217, ¶ 16, 776 N.W.2d 801. "The degree of response required of a party opposing a motion for summary judgment is set by the scope of the motion." *Zueger v. Carlson,* 542 N.W.2d 92, 94 (N.D.1996).

> If the moving party meets its initial burden of showing the absence of a genuine issue of material fact, the party opposing the motion may not rest on mere allegations or denials in the pleadings, but must present competent admissible evidence by affidavit or other comparable means to show the existence of a genuine issue of material fact. Rule 56 requires the entry of summary judgment against a party who fails to establish the existence of a material factual dispute as to an essential element of the claim and on which the party will bear the burden of proof at trial. When no pertinent evidence on an essential element is presented to the trial court in resistance to the motion for summary judgment, it is presumed that no such evidence exists. This Court has repeatedly cautioned that mere speculation is not enough to defeat a motion for summary judgment, and a scintilla of evidence is not sufficient to support a claim.

*Barbie v. Minko Constr., Inc.,* 2009 ND 99, ¶ 6, 766 N.W.2d 458 (internal quotations and citations omitted). " 'On appeal, this Court decides whether the information available to the district court precluded the existence of a genuine issue of material fact and entitled the moving party to judgment as a matter of law.' " *Lucas,* at ¶ 16 (quoting *Barbie,* at ¶ 5) " 'Whether the district court properly granted summary judgment is a question of law which we review de novo on the entire record.' " *Id.*

### III

[¶ 10] Bydal argues the district court erred in granting Collection Center summary judgment on the contribution claims. Bydal's argument requires a brief description of the law for contribution by a co-maker and a co-guarantor of loans and the effect of the assignments in this case.

### A

[¶ 11] Section 9–01–08, N.D.C.C., authorizes a right to contribution between joint obligors: "A party to a joint obligation or to a joint and several obligation who satisfies more than that party's share of the claim against all obligors *may require a proportionate contribution* from all the parties joined with that party." (Emphasis added.) In *In re Estate of Egeland,* 2007 ND 184, ¶¶ 8–11, 741 N.W.2d 724, we considered the meaning of "proportionate contribution" under N.D.C.C. § 9–01–08. We said absent proof of a contrary agreement, " 'a comaker [of a negotiable instrument] who is required to pay the entire obligation may seek contribution or reimbursement from the other comaker for one half of the amount paid.' " *Egeland,* at ¶ 9 (quoting 12 *Williston on Contracts* § 36:15, at 676 (4th ed.1999)). We explained, however, disproportionate contribution may be allowed if the parties have agreed to a different allocation on their liability or "one of the comakers has received a disproportionate benefit from the transaction." *Egeland,* at ¶ 9. We concluded it was proper under N.D.C.C. § 9–01–08 "to consider the benefit received by ... joint obligors in determining a proportionate contribution between them." *Egeland,* at ¶ 11.

[¶ 12] We have also explained that " 'guarantors who pay more than their pro-

portionate share of an obligation are entitled to contribution from other guarantors who are jointly and severally liable for the contribution.'" *Albrecht v. Walter*, 1997 ND 238, ¶ 10, 572 N.W.2d 809 (quoting *Citizens State Bank v. Bossard*, 226 Mont. 75, 733 P.2d 1296, 1298 (1987)). "A guarantor may compel contribution by a coguarantor by an action at law or in equity." *Albrecht*, at ¶ 10. "A paying co[-]guarantor may be denied contribution for the wrongful nature of his conduct or for fraudulently inducing another to become a co-obligor." *Id.*

[¶ 13] In *Albrecht*, 1997 ND 238, ¶¶ 11–14, 572 N.W.2d 809, we specifically considered two competing approaches for assessing guarantor liability, observing that "[s]ome courts have held a guarantor may pay off an obligation, take an assignment of guaranty contracts and the promissory note, and enforce a co-guarantor's guaranty," while "[o]ther courts have held a paying guarantor *may not sue on the note, but is limited to contribution.*" (Emphasis added.) We concluded the rationale for the contribution approach was persuasive and held "a coguarantor may purchase an assignment of a note and the guaranties, but the initial relationship as coguarantors *will operate as a matter of law to restrict the recovery* and will govern the rights of the coguarantors." *Id.* at ¶ 14 (emphasis added). We further held that "all of the defenses to an action for contribution are available to the coguarantor." *Id.* Thus, "[w]hen two or more persons have bound themselves as guarantors, they are generally presumed to be equally liable for a proportion of liability on the note guaranteed, and in the event that one of them has paid more than his or her share of the amount owed, he or she is entitled to demand contribution from the others." 38A C.J.S. *Guaranty* § 166 (2008). The presumption of equal liability may be re-

butted, and a defendant has the burden of proof regarding an affirmative defense. *Id.*

[¶ 14] As applied to the arguments raised in this appeal, those principles mean comakers and coguarantors generally are proportionally liable for the obligation, unless they have agreed to a different allocation or one party receives a disproportionate benefit. Bydal's arguments about contribution also involve the effect of Reimer's subsequent assignment to Collection Center of Reimer's cause of action for contribution against Bydal.

[¶ 15] After an assignment, the assignee acquires no greater rights than held by the assignor, and the assignee merely stands in the shoes of the assignor. *Global Fin. Servs., Inc. v. Duttenhefner*, 1998 ND 53, ¶ 19, 575 N.W.2d 667; *First Nat. Bank v. O'Callaghan*, 143 N.W.2d 104, 106 (N.D.1966); *C.I.T. Corp. v. Hetland*, 143 N.W.2d 94, 98 (N.D.1966). The assignee of a cause of action takes subject to any defenses in existence at the time of assignment or before notice of the assignment. *See Duttenhefner*, ¶ 20; *Pioneer State Bank v. Johnsrud*, 284 N.W.2d 292, 296 (N.D.1979); *Farmers Ins. Exchange v. Arlt*, 61 N.W.2d 429, 437 (N.D. 1953). In *Arlt*, this Court quoted with approval from the Restatement (First) of Contracts § 167 (1932), providing the rule on defenses available against the assignee of a nonnegotiable cause of action:

An assignee's right against the obligor is subject to all limitations of the obligee's right, to all absolute and temporary defenses thereto, and to all set-offs and counterclaims of the obligor which would have been available against the obligee had there been no assignment, provided that such defenses and set-offs are based on facts existing at the time of the assignment, or are based on facts arising thereafter prior to knowledge of the assignment by the obligor.

*Arlt,* 61 N.W.2d at 437. *See also* Restatement (Second) of Contracts § 336 (1981). Therefore, "[b]ecause an assignee acquires no greater rights than were possessed by the assignor, in an action on the claim assigned, *the assignee of a chose in action* is ordinarily subject to any setoff or counterclaim available to the obligor against the assignor, and to all other defenses and equities that could have been asserted against the assignor at the time of the assignment." 6 Am.Jur.2d *Assignments* § 116 (2008) (emphasis added); *see also* 6A C.J.S. *Assignments* § 107 (2004).

■■■ [¶ 16] Although an assignee generally takes a cause of action subject to any defenses, set-offs, or counterclaims, an obligor's recovery on a proper counterclaim may be limited in some cases. *See, e.g., Walters v. Iowa–Des Moines Nat'l Bank,* 295 N.W.2d 430, 434 (Iowa 1980) (obligor's counterclaim could be used against assignee only defensively to reduce the amount of its claim against the obligor and could not result in a personal judgment against assignee; counterclaim could only be established against assignee to the extent of offsetting its claim against obligor); *Litton ABS v. Red–Yellow Cab Co.,* 64 Ohio App.2d 111, 411 N.E.2d 808, 810 (1978) ("assignment does not cast upon the assignee any affirmative liability on the contract assigned unless there is an assumption of the assignor's obligations under the contract"); *cf. Rittenberg v. Donohoe Constr. Co., Inc.,* 426 A.2d 338, 341 (D.C.Ct.App.1981) (assignee is responsible only for obligations of the assignor which he contracts to undertake).

[¶ 17] In *In re Liquidation of the Home Ins. Co.,* 157 N.H. 543, 953 A.2d 443, 448 (2008), the court distinguished between absolute assignments and assignments for collection:

> Under the first type of assignment, the "creditor/assignor ... [transfers] his or her claim against a debtor in such a way as to effect a complete sale of the claim." *DeBenedictis v. Hagen,* 77 Wash.App. 284, 890 P.2d 529, 532 (1995). Such "[a]n absolute assignment divests the assignor of all control and right to a cause of action against the original debtor; the assignee is entitled to control and to receive the benefits of the contract between the original debtor and the assignor." *Uni–Com Northwest, Ltd. v. Argus Pub. Co.,* 47 Wash.App. 787, 737 P.2d 304, 308, *review denied,* 108 Wash.2d 1032 (Wash.1987). Such an assignment "can create mutuality for setoff purposes," [*In re U.S. Aeroteam, Inc.,* 327 B.R. 852, 865 (Bankr.S.D.Ohio 2005)], as follows:
>
> > Under principles of contract law, when party A pays B's debt to C and obtains a valid assignment of C's rights against B, party A may now "step into the shoes" of C and assert all rights C had against B. By way of assignment, there are mutual debts now owing between parties A and B.
>
> *U.S. Aeroteam,* 327 B.R. at 864–65 (citation omitted). . . .
>
> Under the second type of assignment, the "creditor/assignor [assigns] his or her claim against a debtor for purposes of collection." *DeBenedictis,* 890 P.2d at 532.
>
> Such an assignment transfers legal title to the claim, so the assignee can sue in his or her own name[,] . . . [but] leave equitable ownership with the creditor/assignor. The resultant split in ownership gives rise to a fiduciary relationship between the assignor and assignee, and the relationship generally is one of principal-agent.

*Id.* (citations omitted). Thus, an assignee for purposes of collection "has been referred to as the trustee or agent of the

assignor." *Harrison v. Adams*, 20 Cal.2d 646, 128 P.2d 9, 12 (1942).

[¶ 18] In its amended complaint asserting contribution, Collection Center alleges that Reimer assigned to Collection Center "all right, title, and interest" in the loans or debts "for collection purposes." Despite a general denial, Bydal did not specifically deny this allegation in his amended answer and acknowledged Reimer's assignment of the claims in his amended counterclaim. The parties have presented no evidence to establish that Reimer assigned Collection Center the contribution claims for anything other than collection purposes.

### B

[¶ 19] Bydal argues there are disputed issues of material fact regarding the obligations and proportionate shares of Bydal, Reimer, and Stremick and the use of the proceeds from the loans. Bydal also argues there are disputed issues of material fact involving potential set-offs based on Reimer's alleged breach of fiduciary duties as president of Eduit. Bydal further argues Reimer cannot simply "cleanse" himself from Bydal's claims and defenses by assigning his claims to Collection Center.

[¶ 20] Collection Center's amended complaint against Bydal alleges two contribution claims based on Reimer's assignment of his claims to Collection Center. Under *Albrecht*, Reimer was limited in his recovery against Bydal to pursue claims based on contribution under N.D.C.C. § 9–01–08, rather than proceeding directly on the notes. When Reimer assigned his contribution claims to Collection Center, Collection Center acquired no greater rights against Bydal than Reimer possessed. Collection Center thus "stands in the shoes" of Reimer for purposes of the contribution claims.

[¶ 21] Nonetheless, in granting Collection Center summary judgment on the two contribution claims, the district court concluded Bydal had failed to raise any genuine issues of material fact on the contribution claims. The court observed that under the circumstances, it was presumed that all co-obligors benefitted equally, and Bydal had failed to present any competent, admissible evidence to rebut the presumption of equal benefits. The court held the undisputed evidence showed that only Bydal and Reimer were co-obligors on the two notes and that Stremick was not a co-obligor and had no liability for a proportionate share of the loans. Bydal did not submit any competent evidence that he was not an equal owner of Eduit Corporation at the time of the loans, and the district court observed that Bydal had not submitted his own affidavit supporting his conclusory assertion that he does not own 50% of the corporation.

[¶ 22] Bydal nevertheless argues there is a disputed issue of material fact regarding amounts Stremick purportedly owed as a former stockholder and as a co-guarantor on some earlier corporate loans, which contained language stating the guaranties included future loans to Eduit. Bydal contends that because Stremick was a co-obligor on some of the prior obligations, thereby to include the two loans involved in this case, his "proportional share" must be determined to evaluate Bydal's proportionate share in this case and to reduce Reimer's claim for contribution against Bydal.

[¶ 23] Although Bydal cites prior corporate obligations in which there were three co-guarantors, the two specific obligations in this case involved only Bydal and Reimer as co-makers and co-guarantors. Under N.D.C.C. § 9–01–08, a claim for contribution against co-obligors accrues when a joint obligor "satisfies more than

that party's share of the claim." As the district court observed, "Both Bydal and Reimer may seek contribution for any amounts they pay on these loans from Stremick by virtue of his being a former shareholder of the Technology Central and any agreement reached between them and Stremick at the time of his release from the corporation by bringing a separate action." Stremick has not been named as a party in this action, nor do we consider here other potential claims for contribution based on separate obligations or other relief that previously may have accrued against Stremick before the two loans giving rise to Reimer's contribution claims in this case.

[¶ 24] Here, as to the two notes that Reimer paid off and which form the basis of the two contribution claims Reimer assigned to Collection Center, both Reimer and Bydal were equally obligated as co-makers on one note and co-guarantors on the other. As the district court concluded, although Bydal makes conclusory claims about Reimer's corporate mismanagement, there was no evidence creating a disputed issue of material fact that Reimer received an unequal or disproportionate benefit from the loan proceeds. On the basis of our review of the record, Bydal failed to present any competent admissible evidence showing the existence of a genuine issue of material fact. Therefore, we conclude the district court properly granted summary judgment in favor of Collection Center on the contribution claims.

## IV

[¶ 25] Bydal contends that the district court erred in granting Collection Center's motion to strike his counterclaim for Reimer's alleged breached fiduciary duties as president of the corporations. The district court granted Collection Center's motion to strike Bydal's counterclaim, ruling he had failed to seek leave to amend his counterclaim and, alternatively, he did not have a claim against the Bank, which originated the notes Reimer satisfied. Bydal argues that the district court erred in striking his counterclaim for Reimer's breach of a duty of loyalty in his capacity as president of the corporations. Bydal argues that under N.D.R.Civ.P. 15, he is entitled to respond to Collection Center's amended complaint and that under N.D.R.Civ.P. 13, his amended counterclaim was both responsive and compulsory. Bydal further contends that he timely asserted his amended counterclaim in response to the amended complaint and that Collection Center failed to timely object or otherwise respond to his amended counterclaim, thereby rendering Collection Center's motion to strike untimely.

### A

[¶ 26] A district court's consideration of a party's motion to strike is governed by N.D.R.Civ.P. 12(f):

> Upon motion made by a party before responding to a pleading or, if no responsive pleading is permitted by these rules, upon motion made by a party within twenty days after the service of the pleading upon the party or upon the court's own initiative at any time, the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.

[¶ 27] Where our rule is derived from a federal rule, we may look to federal interpretations as persuasive authority for interpreting our rule. N.D.R.Civ.P. 1 (Explanatory Note); *State v. $33,000.00 U.S. Currency*, 2008 ND 96, ¶ 17, 748 N.W.2d 420 (Rule 55); *First Nat. Bank v. Burich*, 367 N.W.2d 148, 155 n. 6 (N.D.1985) (Rule 13); *Phillips–Van Heusen Corp. v. Shark*

*Bros., Inc.,* 289 N.W.2d 216, 218–19 (N.D. 1980) (Rule 15).

[¶ 28] Under N.D.R.Civ.P. 12(f), the district court has discretion either upon a motion by a party or on its own to strike an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter in a pleading. *See Dangerfield v. Markel,* 222 N.W.2d 373, 376–77 (N.D. 1974) (noting N.D.R.Civ.P. 12(f) authorizes striking an insufficient defense, but holding motion to strike had been erroneously used to eliminate "substantive portions" of a defendant's counterclaim); *Federal Savings & Loan Ins. Corp. v. Burdette,* 696 F.Supp. 1183, 1187 (E.D.Tenn.1988) ("Forthrightly dealing with inadequate or improper affirmative defenses and counterclaims at an early stage in the litigation helps the parties focus discovery on the real issues in the case and reduces the cost of litigation to the parties").

[¶ 29] Although motions to strike generally are not favored, we review a district court's decision on a motion to strike under Rule 12(f) for an abuse of discretion. *Federal Land Bank v. Ziebarth,* 520 N.W.2d 51, 55 (N.D.1994). *See also Stanbury Law Firm v. I.R.S.,* 221 F.3d 1059, 1063 (8th Cir.2000) (striking a party's pleadings is an "extreme measure," and such motions are "viewed with disfavor and are infrequently granted"); *Lunsford v. United States,* 570 F.2d 221, 229 (8th Cir.1977) (Rule 12(f) motions viewed with disfavor and infrequently granted). "A district court abuses its discretion when it acts in an arbitrary, unreasonable, or unconscionable manner, or when its decision is not the product of a rational mental process leading to a reasoned determination." *In re Estate of Loomer,* 2010 ND 93, ¶ 20, 782 N.W.2d 648.

**B**

[¶ 30] Bydal argues the district court erred in granting Collection Center's motion to strike because it failed to timely object and respond to his amended counterclaim.

[¶ 31] Rule 12(f), N.D.R.Civ.P., specifically grants the district court discretion to grant relief on its own, and courts have authority to consider a motion to strike at any time. *See, e.g., U.S. v. Lot 65 Pine Meadow,* 976 F.2d 1155, 1157 (8th Cir.1992) (quoting 5A Charles Alan Wright & Arthur A. Miller, *Federal Practice and Procedure* § 1380, at 652–54 (2d ed.1990)). *See also Lunsford v. United States,* 570 F.2d 221, 227 n. 11 (8th Cir.1977); *Wine Markets Int'l, Inc. v. Bass,* 177 F.R.D. 128, 133 (E.D.N.Y.1998); *Wray v. Edward Blank Assocs., Inc.,* 924 F.Supp. 498, 501 (S.D.N.Y.1996). We conclude the district court did not abuse its discretion in considering Collection Center's motion to strike.

**C**

[¶ 32] Bydal argues the district court erred in refusing to allow him to serve an amended counterclaim as part of his answer to Collection Center's amended complaint. Bydal contends his counterclaim for Reimer's alleged breach of fiduciary duties as president of the corporations became available only after the amended complaint was filed, because the amended complaint modified Collection Center's action from a simple collection on bank notes to a contribution claim derived from Reimer.

[¶ 33] Under N.D.R.Civ.P. 15(a), a party served with an amended pleading has the right to "plead in response" to the amendment or changes in the amended pleading. An issue arises under N.D.R.Civ.P. 13(a), however, when a party served with an amended complaint wants to assert counterclaims that should have

been asserted in response to the original complaint. *See* N.D.R.Civ.P. 13(a) (providing for counterclaims that are compulsory and waived if not asserted in response to the complaint). One noted commentator has explained the interrelationship of those two procedural rules:

There are some courts that have held that if a plaintiff files an amended complaint that changes the theory or scope of the case, the defendant is entitled to plead as though it were responding to the original complaint. This means the defendant may add new counterclaims without requesting leave of court. Other courts have found that a defendant may not add counterclaims as of right, even if the plaintiff's amended complaint expands the scope or theory of the case, and that the defendant's right to add counterclaims must be evaluated under the court's discretionary ability to permit an amended answer, including a consideration of such factors as delay in bringing the counterclaim, surprise, and prejudice to the plaintiff.

If an amended pleading does not change the theory or scope of the plaintiff's allegations, as is usually the situation, a defendant must obtain leave of court under Rule 15(a)(2) before it may amend its answer to assert a counterclaim.

Whether to permit counterclaims to be filed in response to an amended complaint invokes considerations involving both Rule 13 (governing counterclaims) and Rule 15 (governing amended pleadings). Courts have struggled to reconcile the concerns addressed by these two Rules, but the better view suggests that, when a plaintiff's amended complaint changes the theory of the case, it would be inequitable to require leave of court before the defendant could respond with appropriate counterclaims.

3 James Wm. Moore, *Moore's Federal Practice* § 15.17[6] (3d ed.2010) (footnotes omitted). *See also* 27A Fed. Proc., L.Ed. § 62:266 (2008) (where a complaint is amended under the provisions governing amendments before trial, "defendants do not need leave to serve new counterclaims or to assert new defenses"); *compare Elite Entertainment, Inc. v. Khela Bros. Entmt.*, 227 F.R.D. 444, 447 (E.D.Va.2005) (amended response may be filed without leave only when amended complaint changes theory or scope of case); *Lobo Recording Corp. v. Waterland*, 197 F.R.D. 23, 26 (E.D.N.Y.2000) ("ample authority demonstrating that amending a complaint to allege new causes of action … constitutes a basis for asserting new counterclaims"); *Tralon Corp. v. Cedarapids, Inc.*, 966 F.Supp. 812, 832 (N.D.Iowa 1997) (new counterclaim permitted to be added without leave of court when amended complaint expanded both factual allegations and claims); *Brown v. E.F. Hutton & Co., Inc.*, 610 F.Supp. 76, 78 (S.D.Fla.1985) ("when a plaintiff files an amended complaint which changes the theory or scope of the case, the Defendant is allowed to plead anew as though it were the original complaint filed by the Plaintiff"); *Joseph Bancroft & Sons Co. v. M. Lowenstein & Sons, Inc.*, 50 F.R.D. 415, 419 (D.Del.1970) ("Since the amending pleader chooses to redo his original work, and receives the benefit of this *nunc pro tunc* treatment, he can hardly be heard to complain that claims filed against him are improper because they should have been asserted in response to his original pleading."), *with Chrysler Corp. v. Fedders Corp.*, 540 F.Supp. 706, 712–13 (S.D.N.Y.1982) (defendant had no right to serve new counterclaims with amended answer and court refused leave to add new counterclaims when delay and prejudice to plaintiff existed); *Owens–Illinois, Inc. v. Lake Shore Land Co.*, 610 F.2d 1185, 1188 (3d Cir.

1979) (refusing to follow *Joseph Bancroft & Sons Co.* and denying permission to add counterclaim).

[¶ 34] Allowing a defendant to add new counterclaims without requesting leave of court when a plaintiff files an amended complaint that changes the scope or theory of the case is also consistent with our decision in *Riverside Park Condos. Unit Owners Assoc. v. Lucas*, 2005 ND 26, ¶¶ 29–32, 691 N.W.2d 862. In *Lucas*, at ¶ 32, we held that a district court did not abuse its discretion in imposing sanctions on a defendant, in part, based on the defendant's failure to seek leave of court before filing amended counterclaims in response to plaintiff's amended complaint. The amended complaint in *Lucas*, however, was a mere clarification of a claim that did not change the scope or theory of the case, and the court found the defendant's actions were a "continuation" of improper behavior for which he previously had been sanctioned. *Id.*

[¶ 35] Here, the district court granted the motion to strike Bydal's amended counterclaim, in part, because Bydal failed to seek leave of court to amend his counterclaim. The court, however, had permitted Collection Center to amend its complaint to change its theory of recovery from an action to collect an assigned debt to an action for assigned claims of contribution under N.D.C.C. § 9–01–08. In granting Collection Center's motion to amend its complaint, the court stated it was merely permitting a clarification of the issues. Collection Center's amended complaint, however, changed the theory of the case, and the district court erred in striking Bydal's amended counterclaim for that reason.

D

[¶ 36] Although we conclude the district court erred in requiring Bydal to seek leave for his amended counterclaim, we must nevertheless consider the propriety of his counterclaim under N.D.R.Civ.P. 13.

[¶ 37] Bydal argues his amended counterclaim is compulsory under N.D.R.Civ.P. 13(a), because it pertained to the "same parties" as the amended complaint, i.e., Collection Center, standing in the shoes of Reimer, and Bydal, and because both the amended complaint and the amended counterclaim dealt with Bydal and Reimer and both arose out of the business dealings of Technology Central and Eduit Corporation. Bydal further contends that even if his amended counterclaim is not compulsory, it is at least a permissive counterclaim under N.D.R.Civ.P. 13(b).

[¶ 38] "[U]nder N.D.R.Civ.P. 13(a), if a claim arises out of the same 'transaction or occurrence that is the subject matter of the opposing party's claim,' it is a compulsory counterclaim and must be pleaded in response to the opposing party's pleading." *Security Nat. Bank v. Wald*, 536 N.W.2d 924, 928 (N.D.1995). "The failure to plead a compulsory counterclaim in response to the opposing party's pleading precludes that counterclaim from being raised in a subsequent action." *Id.* Further, this Court broadly construes "transaction or occurrence" to avoid a multiplicity of suits and to mean a claim that is "logically related" to the opposing party's claim. *See Wald*, at 928; *Leo Lumber Co. v. Williams*, 191 N.W.2d 573, 576 (N.D. 1971).

[¶ 39] Both N.D.R.Civ.P. 13(a) and (b) require a counterclaim be asserted only against an "opposing party." A narrow reading of an "opposing party" under Rule 13 is one who asserts a claim against the prospective counterclaimant in the first instance. *See Transamerica Occidental Life Ins. Co. v. Aviation Office of Am., Inc.*, 292 F.3d 384, 390 (3d Cir.2002); *Augustin v. Mughal*, 521 F.2d 1215, 1216 (8th Cir.

1975); *First Nat. Bank v. Johnson County Nat. Bank & Trust Co.*, 331 F.2d 325, 328 (10th Cir.1964); *Chambers v. Cooney*, 537 F.Supp.2d 1248, 1252 (S.D.Ala.2008). However, "case law delineating who is and is not considered an 'opposing party' under Rule 13 remains murky, prompting one prominent commentator to observe that '[t]he federal courts have not given a definitive answer to the question of who is an opposing party for purposes of a counterclaim.'" *Chambers*, 537 F.Supp.2d at 1252 (quoting 6 Wright, Miller & Kane, *Federal Practice and Procedure:* Civil 2d § 1404).

■ [¶ 40] Generally, the "opposing party" requirement means that when a plaintiff has brought suit in one capacity, the defendant may not counterclaim against the plaintiff in a different capacity. *See, e.g., In re Adbox, Inc.*, 488 F.3d 836, 840 (9th Cir.2007) ("It is well-established that when a party sues in his representative capacity, he is not subject to counterclaims against him in his individual capacity."); *First Union Nat. Bank v. Pictet Overseas Trust Corp.*, 351 F.3d 810, 815 (8th Cir.2003) ("We recognize that some courts read [F.R.Civ.P. 13] to prevent a defendant from counterclaiming against a plaintiff in a capacity different from the one in which the plaintiff initiated the lawsuit."); *Pomfret Farms Ltd. P'ship v. Pomfret Assocs.*, 174 Vt. 280, 811 A.2d 655, 660 (2002) (stating traditionally "defendant may not counterclaim against the plaintiff in a different capacity than that in which plaintiff sued," and citing 3 Moore's Federal Practice ¶ 13.90[2][d] (2002)).

[¶ 41] Courts, however, have observed two exceptions to this rule:

First, if a plaintiff has sued in a representative capacity but will benefit individually from any recovery, a counterclaim may be made against the plaintiff in his individual capacity. Second, a counterclaim may be made against a plaintiff in a capacity different than that in which he sued if principles of equity and judicial economy support such a counterclaim.

*Blanchard v. Katz*, 117 F.R.D. 527, 529 (S.D.N.Y.1987); *see Pomfret Farms*, 811 A.2d at 660–61 (individual partners in privity with general partnership qualified as "opposing parties" under Rule 13(a)); *Scott v. United States*, 173 Ct.Cl. 650, 354 F.2d 292, 300–01 (1965) (permitting counterclaim against individual partnership members, stating "judgments rendered on partnership demands result in an immediate pro rata gain to individual partners, since they actually own the claim in most senses"); *Leon Tempelsman & Son v. TECC Corp.*, 107 F.R.D. 384, 385 (N.D.Tex.1985) (disallowing permissive counterclaim against individual suing in capacity of a limited partnership).

[¶ 42] Additionally, some courts have broadly interpreted "opposing party" for reasons similar to the rationale for interpreting "transaction or occurrence" in the interest of judicial economy. *See Transamerica Occidental*, 292 F.3d at 390–91 (discussing *Avemco Ins. Co. v. Cessna Aircraft Co.*, 11 F.3d 998, 1001 (10th Cir.1993) (insurer-subrogee, not named as a party to the original litigation, was opposing party for Rule 13(a) purposes because of close relationship with the named opposing party), and *Banco Nacional de Cuba v. First Nat'l City Bank of New York*, 478 F.2d 191, 193 n. 1 (2d Cir.1973) (treating party not named in litigation as opposing party after concluding the parties were "one and the same for the purposes of th[e] litigation.")). "Where parties are functionally equivalent ..., where an unnamed party controlled the litigation, or where ... an unnamed party was the alter ego of the named party, they should be treated as opposing parties within the meaning of

Rule 13." *Transamerica Occidental,* 292 F.3d at 391.

[¶ 43] Here, Collection Center's amended complaint against Bydal alleged contribution under N.D.C.C. § 9–01–08, after Collection Center received an assignment of Reimer's personal contribution claims. Bydal's amended counterclaim, however, asserts claims for breach of fiduciary duties against Reimer in his capacity as president of the corporations. Collection Center, as a collection agency, received the assignment of claims from Reimer for purposes of collection, and there is no evidence there was an absolute assignment so that Collection Center "stepped into the shoes" of Reimer for liability for alleged wrongful acts committed by Reimer as corporate president. *Cf. In re Liquidation of the Home Ins. Co.,* 953 A.2d at 448 (distinguishing between assignments for collection and absolute assignments).

[¶ 44] Bydal nevertheless argues his counterclaim should be an available setoff to Collection Center's action. "Setoff is a form of counterclaim which a defendant may urge by way of defense or to obtain a judgment for whatever balance is due." *Trueheart v. Braselton,* 875 S.W.2d 412, 415 (Tex.Ct.App.1994). "Setoff is the doctrine of bringing into the presence of each other the obligation of A to B and B to A and by the judicial action of the court making each obligation extinguish the other." *Id.* (quotations omitted). Setoff requires mutuality of the parties, such that "debts and credits are mutual when they are due to and from same person in same capacity." 80 C.J.S. *Set-off and Counterclaim* § 66 (2010).

In accordance with the general rules requiring mutuality of the debts or demands, ordinarily a claim against the plaintiff in a representative capacity cannot be set off in a suit brought in his or her individual capacity, *and vice versa,* and an individual demand against the plaintiff suing in a representative capacity cannot be counterclaimed. Thus, the director of a corporation, sued in an individual capacity, cannot assert a derivative claim that could only be asserted by the corporation, itself, as a counterclaim. Similarly, when the cause of action sued on is the defendant's failure to fulfill an official or fiduciary obligation, the defendant cannot set off a debt due from the plaintiff to him or her in an individual capacity.

"Capacity," for the purposes of determining whether set-off may be allowed for a debt due to and from a person in the same capacity, means legal capacity, e.g., principal, agent, trustee, beneficiary.

80 C.J.S. *Set-off and Counterclaim* § 71 (2010) (emphasis added).

[¶ 45] Bydal's amended counterclaim is broader than merely seeking a setoff. Instead, Bydal's counterclaim asserts a claim, which may be derivative or individual, against Reimer in his capacity as president of the corporations for breach of fiduciary duties owed to the corporations, asserts injury to the corporations, investors, and shareholders, and seeks a separate judgment for those damages. Although Collection Center is an "opposing party" as the assignee of Reimer's individual claims for contribution, we conclude Collection Center is not an "opposing party" under N.D.R.Civ.P. 13(a) and (b) for purposes of Bydal's fiduciary duty claims against Reimer in his capacity as president of the corporations. Because Collection Center is not an "opposing party" under either N.D.R.Civ.P. 13(a) or (b) for purposes of Bydal's amended counterclaim, we further conclude the district court did not abuse its discretion in granting Collection Center's motion to strike,

albeit for a different reason. *See, e.g., Avco Fin. Servs. v. Schroeder,* 318 N.W.2d 910, 912 (N.D.1982) ("We have held previously that a correct result will not be set aside merely because the trial court assigned an incorrect reason for its decision 'if the results are the same under applicable reasons.' ").

[¶ 46] Although we conclude the district court did not abuse its discretion striking Bydal's counterclaim, nothing in this opinion limits Bydal's ability to pursue his claims for breach of duty of loyalty and fiduciary duties against Reimer in an independent action, to the extent those claims have accrued and subject to any proper defenses.

V

[¶ 47] We have considered the remaining issues and arguments and consider them to be unnecessary to our decision or without merit. The district court judgment is affirmed.

[¶ 48] GERALD W. VANDE WALLE, C.J., DANIEL J. CROTHERS, MARY MUEHLEN MARING, and CAROL RONNING KAPSNER, JJ., concur.