**STATE of North Dakota ex rel. Bonnie ASKEW et al., Petitioners,**

**v.**

**Ben MEIER, as Secretary of State of the State of North Dakota, Respondent.**

**Civ. No. 9129.**

Supreme Court of North Dakota.

July 11, 1975.

Rehearing Denied July 30, 1975.

R. W. Wheeler and Kent A. Higgins, Bismarck, and Alice Olson, Senior Law Student, for petitioners, argued by Olson.

Owen L. Anderson, Sp. Asst. Atty. Gen., Bismarck, for respondent Secretary of State.

Elton W. Ringsak, Grafton, for referral committee.

VOGEL, Justice.

The question before us is whether the ratification by the Legislature of the Equal Rights Amendment can be the subject of a referendum, either binding or advisory.

The Forty-fourth Legislative Assembly of the State of North Dakota, during its regular 1975 Session, passed Senate Concurrent Resolution No. 4007, which reads:

"WHEREAS, the 92nd Congress of the United States of America at its second Session, in both Houses, by a constitutional majority of two-thirds thereof, adopted the following proposition to amend the Constitution of the United States of America in the following words, to wit:

"JOINT RESOLUTION

'Resolved by the Senate and House of Representatives of the United States of America in Congress assembled (two-thirds of each House concurring therein), That the following article is proposed as an amendment to the Constitution of the United States, which shall be valid to all intents and purposes as part of the Constitution when ratified by the Legislature of three-fourths of the several States within seven years from the date of its submission by the Congress:

"ARTICLE

'Section 1. Equality of rights under the law shall not be denied or abridged by the United States or by any State on account of sex.

'Section 2. The Congress shall have the power to enforce, by appropriate legislation, the provisions of this article.

'Section 3. This Amendment shall take effect two years after the date of ratification.'

"NOW, THEREFORE, BE IT RESOLVED BY THE SENATE OF THE STATE OF NORTH DAKOTA, THE HOUSE OF REPRESENTATIVES CONCURRING THEREIN:

"That the said proposed amendment to the Constitution of the United States of America be and the same is hereby ratified by the Forty-fourth Legislative Assembly of the state of North Dakota; and

"BE IT FURTHER RESOLVED, that certified copies of this resolution be forwarded by the Governor of the state of North Dakota to the Administrator of

General Services, Washington, D. C., and to the President of the Senate and the Speaker of the House of Representatives of the Congress of the United States."

Subsequently, petitions were filed with the Secretary of State of North Dakota, seeking a referendum of Senate Concurrent Resolution No. 4007 under Section 25 of the North Dakota Constitution. The petitioners herein, alleging that resolutions ratifying amendments to the United States Constitution are not subject to referenda by the people of the various States, commenced this proceeding.

Article V of the United States Constitution reads:

"The Congress, whenever two thirds of both Houses shall deem it necessary, shall propose Amendments to this Constitution, or, on the Application of the Legislatures of two thirds of the several States, shall call a Convention for proposing Amendments, which, in either Case, shall be valid to all Intents and Purposes, as Part of this Constitution when ratified by the Legislatures of three fourths of the several States, or by Conventions in three fourths thereof, as the one or the other Mode of Ratification may be proposed by the Congress; Provided that no Amendment which may be made prior to the Year One thousand eight hundred and eight shall in any Manner affect the first and fourth Clauses in the Ninth Section of the first Article; and that no State, without its Consent, shall be deprived of its equal Suffrage in the Senate."

The Constitution of North Dakota provides:

"The legislative power of this state shall be vested in a legislature consisting of a senate and a house of representatives. The people, however, reserve the power, first, to propose measures and to enact or reject the same at the polls; second, to approve or reject at the polls any measure or any item, section, part or parts of any measure enacted by the legislature.

. . . . .

"The second power reserved is the referendum. Seven thousand electors at large may, by referendum petition, suspend the operation of any measure enacted by the legislature, except an emergency measure. But the filing of a referendum petition against one or more items, sections or parts of any measure, shall not prevent the remainder from going into effect. Such petition shall be filed with the Secretary of State not later than ninety days after the adjournment of the session of the legislature at which such measure was enacted." Art. II, Sec. 25, N. D. Constitution.

I

 Although attempts to refer ratification of amendments to the United States Constitution have not previously been made in this State, such challenges have been made elsewhere. Two such challenges reached the United States Supreme Court in 1920. One challenged the Ohio ratification of the Nineteenth Amendment, granting suffrage to women, and the other challenged the Ohio ratification of the Eighteenth Amendment, relating to prohibition. The Supreme Court held that Article V of the Bill of Rights is a grant of authority by the people to the Congress; that the method of ratification of amendments is an exercise of a national power specifically granted by the Constitution; that the power is conferred upon the Congress and is limited to two methods: by action of the legislatures of three-fourths of the States, or conventions in a like number of States; that ratification of a constitutional amendment is not an act of legislation within the proper sense of the word, but an expression of the assent of the State to a proposed amendment; that the act of ratification by the State derives its authority from the Federal Constitution; and that a State has no authority to require the submission of the ratification to a referendum under the State Constitution. *Hawke v. Smith*, 253 U.S. 221, 40

S.Ct. 495, 64 L.Ed. 871 (1920); *Hawke v. Smith,* 253 U.S. 231, 40 S.Ct. 598, 64 L.Ed. 877 (1920); *National Prohibition Cases,* 253 U.S. 350, 40 S.Ct. 486, 64 L.Ed. 946 (1920).

A number of State courts have held to the same effect. The Supreme Court of Maine held, in *In re Opinion of the Justices,* 118 Me. 544, 107 A. 673, 675, 5 A.L.R. 1412 (1919), that the power of the people of Maine

> ". . . over amendments had been completely and unreservedly lodged with the bodies designated by article 5, and so long as that article remains unmodified they have no power left in themselves either to propose or to ratify federal amendments. The authority is elsewhere.

> "But the people, by the adoption of the initiative and referendum amendment, did not intend to assume or regain such power."

The Supreme Court of Missouri held, in *State ex rel. Tate v. Sevier,* 333 Mo. 662, 62 S.W.2d 895, 897, 87 A.L.R. 1315, *cert. denied,* 290 U.S. 679, 54 S.Ct. 102, 78 L.Ed. 586 (1933):

> "The ratification or rejection of an amendment to the federal Constitution is a federal function derived from the federal Constitution itself. By the adoption of article 5 of the federal Constitution the people divested themselves of all authority to either propose or ratify amendments to the Constitution. By the same article they vested the power to propose amendments in the Congress and in a convention called by Congress, and designated the state Legislatures and state conventions as representatives of the people, with authority to ratify or reject proposed amendments to the Constitution. When a state Legislature performs any act looking to the ratification or rejection of an amendment to the federal Constitution, it is not acting in accordance with any power given to it by the state Constitution, but is exercising a power conferred upon it by the federal Constitution."

Other State court decisions in accord are *State v. Murray,* 526 P.2d 1369 (Mont.1974); *Decher v. Vaughan,* 209 Mich. 565, 177 N.W. 388 (1920); and *State ex rel. Gill v. Morris,* 79 Okl. 89, 191 P. 364 (1920). The only decisions *contra* antedate the two United States Supreme Court decisions in *Hawke v. Smith, supra,* and were overruled by them. *State ex rel. Mullen v. Howell,* 107 Wash. 167, 181 P. 920 (1919); *Hawke v. Smith,* 100 Ohio St. 385, 126 N.E. 400 (1919).

All the decisions cited above contain scholarly references to the constitutional convention proceedings and authoritative interpretations of the Constitution supporting their conclusions. We will not repeat the discussions here, but only note our agreement with them.

## II

The parties appear to agree that the referendum sought here cannot undo the ratification of the amendment. However, the attorney for the referendum petitioners now tells us that the purpose of the referendum petitions was to obtain a "straw vote" or plebiscite on the ratification, and he asks us to permit the referendum to proceed on that basis.

◼ The first answer to this argument is that the stated purpose of the referendum petitions was to "request that Senate Concurrent Resolution No. 4007, . . . providing for the ratification of a proposed amendment to the Constitution of the United States, prohibiting states from denying a citizen equality of rights under law on account of sex, popularly known as the so called Equal Rights Amendment, be placed upon the ballot, and that it be submitted by the Secretary of State *for approval or rejection by the electors* of the State of North Dakota at the next primary or special Statewide election, whichever comes first; and that, in the meanwhile, the *operation* of Senate Concurrent Resolution No. 4007 *be*

*in all things suspended.*" [Emphasis added.]

This is not language indicative of an intention to hold a straw vote or nonbinding plebiscite. It is, instead, language indicative of an intention to suspend operation of a resolution and thereby end or destroy its operative effect.[1]

The second answer is that Section 25 of the Constitution, invoked by the referral petitioners, does not authorize the use of the referendum procedure for nonbinding plebiscites or straw votes. Section 25 provides that the requisite number of electors may "suspend the operation of any measure enacted by the Legislature, except an emergency measure." It provides a method for accomplishing that purpose—the suspension of operation of a measure enacted by the Legislature. The word "measure" is defined to include resolutions.

We therefore hold that the petitions are ineffectual to either (1) require a referendum under the State Constitution of the Legislature's ratification of the Equal Rights Amendment; or (2) authorize a nonbinding plebiscite or straw vote as to the views of the electorate on such ratification.

### III

This is not to say that a "straw vote," authorized as such by the Legislature or by the initiative, could not be held. Such a straw vote may be possible, in accordance with the right guaranteed in the First Amendment to the United States Constitution, which provides:

"Congress shall make no law . . . abridging . . . the right of the people . . . to petition the Government for a redress of grievances";

and Section 10 of Article I of the North Dakota Constitution, which provides:

"The citizens have a right, in a peaceable manner, . . . to apply to those invested with the powers of government for the redress of grievances, or for other proper purposes, by petition, address or remonstrance."

See *Spriggs v. Clark,* 45 Wyo. 62, 14 P.2d 667 (1932), and *State ex rel. Fulton v. Zimmerman,* 191 Wis. 10, 210 N.W. 381 (1926). The issue is not before us in this case, however, and has not been briefed or argued.

We hold here that an attempt to reverse the legislative ratification through the referendum process, forbidden by Federal constitutional law, cannot be converted into a nonbinding plebiscite.

The Secretary of State is therefore enjoined from placing on the ballot at any Statewide election, on the basis of the referendum petitions filed with him by the referral committee, a referendum upon the adoption of Senate Concurrent Resolution No. 4007 by the Forty-fourth Legislative Assembly of the State of North Dakota.

ERICKSTAD, C. J., and PEDERSON, PAULSON and SAND, JJ., concur.

---

1. One of the referral petitioners, Rep. Earl C. Rundle, has suggested that a straw vote on preference as to time zones, held in the western part of North Dakota on September 3, 1968, presents a historical parallel to the proposed referendum here. However, we take judicial notice of Associated Press stories printed in the Bismarck Tribune of May 27, 1968, and the Fargo Forum of June 23, 1968, and of a letter from the Attorney General to the Governor dated May 24, 1968, and find that the 1968 vote was conducted by county commissioners of the separate counties, at the suggestion of the Governor but at county expense, pursuant to an opinion of the Attorney General that such a nonbinding straw vote was a matter of legitimate county concern, but that no State funds could be spent. We therefore conclude that the 1968 vote does not assist us in deciding the issue before us, which involves the use of the constitutional referendum procedure to refer a ratification of a constitutional amendment.