STATE of North Dakota, ex rel., Robert O. WEFALD, Attorney General, Petitioner,

v.

Ben MEIER, Secretary of State, Respondent and Cross-Petitioner.

Civ. No. 10679.

Supreme Court of North Dakota.

April 23, 1984.

Robert O. Wefald, Atty. Gen. [argued], and Terry L. Adkins, Asst. Atty. Gen., Bismarck, for petitioner.

Dale W. Moench, Sp. Asst. Atty. Gen., Bismarck, for respondent and cross-petitioner.

Senator Herschel Lashkowitz, Fargo, appeared as a member of the Sponsoring Committee.

GIERKE, Justice.

This is an original proceeding to review the proposed statement prepared by the Secretary of State regarding the substance of Referred Measure No. 3 and the effect of an affirmative or negative vote on that measure. This measure is to be included on the June 12, 1984, primary ballot. The facts are stipulated.

The 48th Session of the Legislative Assembly of the State of North Dakota passed House Bill No. 1500. It was signed by the Governor and filed with the Secretary of State on April 19, 1983. House Bill No. 1500, codified as Chapter 191 of the 1983 North Dakota Session Laws, provides that the name of Minot State College be changed to "Dakota Northwestern University—Minot". Petitions to refer House Bill No. 1500 to the people were approved as to form by the Secretary of State on May 23, 1983. In *Haugland v. Meier*, 335 N.W.2d 809 (N.D.1983) "[Haugland I]", this court set aside the Secretary of State's approval as to form because the petitions contained an impermissible statement of intent.

Subsequent referral petitions were pre-pared and were approved as to form by the Secretary of State on July 5, 1983. This court was then requested, but refused, to set aside the Secretary of State's approval as to form of the second set of petitions. *Haugland v. Meier*, 339 N.W.2d 100 (N.D. 1983) "[Haugland II]". Thereafter, the Secretary of State prepared to place the referral of House Bill No. 1500 on the June 1984 primary election ballot.

Section 16.1-06-09 of the North Dakota Century Code provides that the Secretary of State shall draft, and the Attorney General shall approve, explanatory statements which must appear on the ballot as to the substance of the referred measure and as to the effect of an affirmative or negative vote on the measure. The statement prepared by the Secretary of State appears as follows:

"Referred Statutes (Measures)

No. 3

*The statute referred provides for a change in the name of Minot State College to Dakota Northwestern University.*

Ballot Title:

As enacted by the 1983 Legislative Assembly, this referred measure provides for a change in the name of Minot State College to Dakota Northwestern University.

A 'yes' vote means you approve the statutory law providing for a change in the name of Minot State College to Dakota Northwestern University.

A 'no' vote means you reject the statutory law providing for a change in the name of Minot State College to Dakota Northwestern University.

Shall said referred measure be approved:

Yes ____

No ____"

This proposed statement was submitted to the Attorney General for his approval pursuant to § 16.1-06-09, N.D.C.C. The Attorney General concluded that the statement was contrary to law and rejected it. He further suggested that the following statement appear on the ballot in place of that proposed by the Secretary of State:

"Referred Measure

No. 3

*The measure referred amended three sections of the North Dakota Century Code to change the name of Minot State College to Dakota Northwestern University.*

Ballot Title

As enacted by the 1983 Legislative Assembly, this referred measure amended three sections of the North Dakota Century Code to change the name of Minot State College to Dakota Northwestern University.

A 'yes' vote means you wish to repeal this measure which changed the name of Minot State College to Dakota Northwestern University.

A 'No' vote means you do not wish to repeal this measure which changed the name of Minot State College to Dakota Northwestern University.

Shall said referred measure be repealed?

     Yes \_\_\_

     No  \_\_\_"

The Attorney General petitioned this court for the issuance of an appropriate writ declaring that his proposed ballot statement is in accordance with the Constitution and laws of the State of North Dakota. The Secretary of State then filed a response and cross-application asking this court to deny the Attorney General's petition and requesting that this court issue an appropriate writ holding that the statement and proposed ballot of the Secretary of State is correct under the Constitution and the laws of the State.

Before turning to the merits of this controversy, we must first determine whether or not this court has jurisdiction to determine the issue.

■ Article VI, Section 2, of the North Dakota Constitution, gives this court authority to exercise original jurisdiction and to issue remedial writs as may be necessary to properly exercise the court's jurisdiction. The power vested in this court to issue original writs is a discretionary power which may not be invoked as a matter of right, and this court will determine for itself whether or not a particular case is within its original jurisdiction. *State ex rel. Peterson v. Olson,* 307 N.W.2d 528 (N.D.1981). It is well settled that the power of this court to issue writs in the exercise of its original jurisdiction extends only to those cases in which the question presented is *publici juris,* wherein the sovereignty of the State, the franchises or prerogatives of the State, or the liberties of its people are affected. *State ex rel. Link v. Olson,* 286 N.W.2d 262 (N.D.1979). To warrant the exercise of this court's original jurisdiction, the interests of the State must be primary, not incidental, and the public, the community at large, must have an interest or right which may be affected, *State ex rel. Vogel v. Garaas,* 261 N.W.2d 914, 916 (N.D.1978).

■ In this case, the Secretary of State, pursuant to his authority under § 16.1–06–09, N.D.C.C., in preparing the printed ballot for a referred measure, placed thereon a statement representing, in his opinion, the substance of the referred measure. The Attorney General, operating pursuant to his authority under that same statutory provision, has refused to approve the Secretary of State's ballot statement. Involved here is the process of referendum whereby the people, through the exercise of their right to vote, determine the laws under which they will be governed. Few matters encompass more public interest than this process which reserves unto the people the power to govern themselves. See *Dawson v. Tobin,* 74 N.D. 713, 24 N.W.2d 737 (1946). This dispute encompasses an important and fundamental step in the referendum process. We conclude, therefore, that this is a matter of public interest which warrants our exercise of original jurisdiction.

■ The Attorney General's application may have implied but did not allege that the Secretary of State had taken a position adverse to that of the Attorney General. However, with the Secretary's filing of a cross-application challenging the Attorney General's revised statement, this court was

presented with a justiciable issue sufficient to warrant the exercise of our jurisdiction.

Section 16.1–06–09, N.D.C.C., provides in relevant part:

*"16.1–06–09. Constitutional amendments and initiated and referred measures—Placed on separate ballot—Manner of stating question—Explanation of effect of vote—Order of listing....* Immediately preceding the ballot title of the initiated or referred measure on the printed ballot, the secretary of state shall cause to be printed a short, concise statement in boldface type, which statement shall fairly represent the substance of the initiated or referred measure. The attorney general shall approve all such statements written by the secretary of state. Immediately subsequent to the foregoing statement, the secretary of state shall cause to be printed another short, concise statement of the effect of an affirmative or negative vote on the constitutional amendment or measure, initiated measure, or referred measure in terms of whether the proposal will or will not enact, amend, or repeal a portion or portions of the constitution or laws of the state of North Dakota if an affirmative or negative vote should prevail. This explanatory statement shall be drafted by the secretary of state and shall be approved by the attorney general. The words 'Yes' and 'No' shall be printed on the ballot at the close of the statement regarding the effect of an affirmative or negative vote...."

The Attorney General rejected the Secretary of State's statement because he concluded it was contrary to law in that it did not correctly apprise the voters of the effect of an affirmative or negative vote. It is the Attorney General's position that a referendum vote is essentially a negative act to reject or to repeal a bill enacted into law by the Legislature. If this were the case, the Attorney General argues that an affirmative vote should be construed as a vote to repeal the bill; and a negative vote would be construed as a vote not to repeal the bill. The practical effect of the Attor-

ney General's position in this case would be that a "Yes" vote would be a vote against the proposed name change contained in House Bill No. 1500 and a "No" vote would be a vote in favor of House Bill No. 1500.

Article III, Section 1 of the Constitution of North Dakota provides, in part, as follows:

*"Section 1.* While the legislative power of this state shall be vested in a legislative assembly consisting of a senate and a house of representatives, the people reserve the power to ... approve or reject legislative Acts, or parts thereof, by the referendum; .... This article is self-executing and all of its provisions are mandatory. Laws may be enacted to facilitate and safeguard, but not to hamper, restrict, or impair these powers."

Article III, Section 5 of the Constitution of North Dakota provides, in part, as follows:

*"Section 5.* ... A referendum petition may be submitted only within ninety days after the filing of the measure with the secretary of state. The submission of a petition shall suspend the operation of any measure enacted by the legislative assembly except emergency measures and appropriation measures for the support and maintenance of state departments and institutions...."

The Constitution further provides in Article III, Section 8, as follows:

*"Section 8. If a majority of votes cast upon an initiated or a referred measure are affirmative, it shall be deemed enacted.* An initiated or referred measure which is approved shall become law thirty days after the election, and a referred measure which is rejected shall be void immediately...." [Emphasis added.]

■ The language of Article III, Section 8 of the Constitution of North Dakota, clearly states that a referred measure shall be deemed enacted if a majority of the votes cast are affirmative and that a referred measure which is rejected shall immediately become void. It is clearly the intent of the Constitution that the voters

cast their ballots to approve or reject the referred measure, not to repeal or reject the actions of their Legislature. Our prior cases are in accord.

In *Dawson v. Tobin,* 74 N.D. 713, 24 N.W.2d 737 (1946), this court dealt with the now-repealed Section 25 of the original Article II of the North Dakota Constitution. Our analysis in *Tobin, supra* 24 N.W.2d at 747–748, of the referendum process is nevertheless applicable to the issue presented in the instant case:

> "The only question that is or can be submitted at a referendum election is whether the referred measure, or such parts thereof as are referred, shall be approved or rejected.... Under the referendum provisions of the constitution the lawmaking power of the legislature is not final but is in every instance subject to the reserved power of the people to approve or reject any measure or any item or any part of any measure. A legislative enactment becomes final only in the sense that the legislative processes are completed, and that it is no longer subject to rejection (*through the legislative power reserved by the people*)—either when the time for invoking the power of the referendum has passed without such power being invoked, or when the measure has been approved at the referendum election." [Emphasis added.]

In *Baird v. Burke County,* 53 N.D. 140, 205 N.W. 17, 23 (1925), we stated that:

> "The reserved power, known as the referendum, is negative; it is entirely distinct and fundamentally different from that of the initiative. Through the referendum a definite number of electors may have submitted to the people as a whole a specific act, or part of an act, for approval or disapproval. *Nothing is before the electorate but the concrete proposition, as advertised in the election notices and as appearing on the ballot, whether a certain law, or a specified part of a certain law, shall be approved or disapproved.*" [Emphasis added.]

In *Haugland II, supra* 339 N.W.2d at 104, we stated that "[t]he referral process has basically one objective, that is to cause the measure or bill to be placed on the ballot for a vote of the people".

■ It is clear from our review of the constitutional provisions and our prior cases that the referendum is the means by which the legislative power is reserved by the people. It is a part of the legislative process which is not complete until the time for filing referral petitions has passed, or the measure has been either rejected or approved by the voters at an election having the referred measure on the ballot.

We have reviewed the proposed statement of the Secretary of State and find it to be in accordance with the Constitution and laws of the State of North Dakota. The application of the Attorney General is denied and the cross-application of the Secretary of State is granted.

ERICKSTAD, C.J., and PEDERSON, VANDE WALLE and SAND, JJ., concur.