2012 ND 64

**NORTH DAKOTA STATE BOARD OF HIGHER EDUCATION,** Petitioner

v.

**Al JAEGER, Secretary of State, in his official capacity, Fighting Sioux Ballot Measures aka Committee For Understanding and Respect, Respondents**

and

**North Dakota Legislative Assembly, Intervenor.**

No. 20120112.

Supreme Court of North Dakota.

April 3, 2012.

Douglas Alan Bahr, Solicitor General, Office of Attorney General, Bismarck, N.D., for petitioner.

Sarah Andrews Herman (argued), Special Assistant Attorney General, Matthew Allen Kipp (on brief), Special Assistant Attorney General, Fargo, N.D., for respondent Al Jaeger.

Reed Alan Soderstrom (argued), Minot, N.D., and Stephen John Behm (appeared), Eskens, Gibson & Behm, Chtd., Mankato, MN, for respondent Fighting Sioux Ballot Measures aka Committee For Understanding and Respect.

Patrick W. Durick (argued) and Zachary Evan Pelham (appeared), Bismarck, N.D., for intervenor.

VANDE WALLE, Chief Justice.

[¶ 1] The Justices signing this majority opinion would exercise this Court's discretionary original jurisdiction and decide now the constitutionality of the legislative enactment requiring the University of North Dakota ("UND") to use the "Fighting Sioux" nickname and logo. We conclude the question of the constitutional authority of the Board of Higher Education, in contrast to the constitutional authority of the legislature, is properly before this Court and is ready to be decided. Those Justices writing separately, however, conclude the issue is not properly before this Court at this time, is not ready to be decided and they will not decide the issue at this time. The necessary number of Justices required to decide the merits is lacking and for this reason we must deny the application of the State Board of Higher Education.

[¶ 2] The North Dakota Attorney General, representing the State Board of Higher Education, petitioned this Court to exercise its original jurisdictional and enjoin Secretary of State Al Jaeger from placing on the June 2012 primary election ballot a referendum measure to reject 2011 N.D. Sess. Laws ch. 580 ("Senate Bill 2370"). The submission of the referendum measure to the Secretary of State reinstated N.D.C.C. § 15–10–46, which requires UND to use the "Fighting Sioux" nickname and logo for its intercollegiate athletic teams. The Board asks this Court to invoke either its mandatory original jurisdiction under N.D. Const. art. VIII, §§ 6

and 7, or its discretionary original jurisdiction under N.D. Const. art. VI, § 2, to declare that N.D.C.C. § 15–10–46 unconstitutionally infringes on the Board's authority for the control and administration of UND and to enjoin the Secretary of State from placing the referendum measure on the June 2012 primary election ballot. Under N.D. Const. art. VI, § 4, this Court "shall not declare a legislative enactment unconstitutional unless at least four of the members of the court so decide." As we stated above, although a majority of this Court would exercise its discretionary original jurisdiction and consider the underlying constitutional issue about the Board's authority over UND, two members of this Court have concluded this is not an appropriate case to exercise its discretionary original jurisdiction. As a result, there are not enough members of this Court willing to decide the constitutional issue at this time. We therefore do not address the constitutional issue, and we decline to enjoin the Secretary of State from placing the referendum measure on the June 2012 primary election ballot.

I

[¶ 3] In *Davidson v. State,* 2010 ND 68, ¶¶ 2–7, 781 N.W.2d 72, we described the background for the Board's involvement with UND's use and retirement of the "Fighting Sioux" nickname and logo for its intercollegiate athletic teams. In *Davidson,* at ¶¶ 20–21, we construed a settlement agreement in litigation by the Board and UND against the National Collegiate Athletic Association ("NCAA"), and we held the agreement permitted the Board to end UND's use of the nickname and logo before November 30, 2010.

[¶ 4] During the 2011 regular legislative session, the legislature enacted 2011 N.D. Sess. Laws ch. 118, § 1, which was codified at N.D.C.C. § 15–10–46 effective August 1, 2011, and required UND to use the "Fighting Sioux" nickname and logo for its intercollegiate athletic teams:

The intercollegiate athletic teams sponsored by the university of North Dakota shall be known as the university of North Dakota fighting Sioux. Neither the university of North Dakota nor the state board of higher education may take any action to discontinue the use of the fighting Sioux nickname or the fighting Sioux logo in use on January 1, 2011. Any actions taken by the state board of higher education and the university of North Dakota before the effective date of this Act to discontinue the use of the fighting Sioux nickname and logo are preempted by this Act. If the national collegiate athletic association takes any action to penalize the university of North Dakota for using the fighting Sioux nickname or logo, the attorney general shall consider filing a federal antitrust claim against that association.

[¶ 5] During the 2011 special legislative session, the legislature enacted Senate Bill 2370, which repealed N.D.C.C. § 15–10–46, effective December 1, 2011. Senate Bill 2370 also provided that neither the Board nor UND may adopt or implement an athletic nickname or corresponding logo before January 1, 2015.

[¶ 6] On December 13, 2011, the Secretary of State approved a referendum petition for circulation to the North Dakota voters to reject Senate Bill 2370. On February 7, 2012, the Sponsoring Committee submitted the referendum petition, with apparent sufficient valid signatures to place the referendum petition on the June 2012 primary election ballot, to the Secretary of State. Under N.D. Const. art. III, § 5, the submission of the petition to the Secretary of State suspended the enactment of S.B. 2370, which effectively reinstated the requirement in N.D.C.C. § 15–

10–46 that UND use the "Fighting Sioux" nickname and logo for its intercollegiate athletic teams.

[¶ 7] On February 17, 2012, the Attorney General, on behalf of the Board, petitioned this Court to exercise its original jurisdiction and enjoin the Secretary of State from placing the referendum petition on the June 2012 primary election ballot. On our own motion, we added the Sponsoring Committee for the referendum petition as a party to this proceeding, and we subsequently granted the Legislative Assembly's motion to intervene. On March 13, 2012, the Secretary of State certified the referendum petition for placement on the June 2012 primary election ballot. On March 15, 2012, we heard oral argument on the Attorney General's petition on behalf of the Board.

## II

[¶ 8] The Board argues this Court has mandatory original jurisdiction under N.D. Const. art. III, §§ 6 and 7 to review decisions by the Secretary of State regarding initiative and referendum petitions. The Board alternatively argues that if this Court lacks mandatory original jurisdiction to review referendum decisions by the Secretary of State, this Court should exercise its discretionary original jurisdiction under N.D. Const. art. VI, § 2.

[¶ 9] The Secretary of State, the Sponsoring Committee, and the Legislative Assembly respond that the Secretary of State has a limited ministerial role when reviewing petitions for a referred measure. They assert if the petitions are proper in form and contain the requisite number of valid signatures, the Secretary of State must place the measure on the ballot without considering the substance or determining the constitutionality of the referred measure. The Sponsoring Committee and the Legislative Assembly argue the consti-

tutionality of N.D.C.C. § 15–10–46 is not ripe for review before the voters have an opportunity to vote on the referendum measure. The Legislative Assembly also argues the specific language in N.D. Const. art. III, §§ 6 and 7 controls the general language for this Court's discretionary original jurisdiction in N.D. Const. art. VI, § 2.

[¶ 10] This Court generally reviews decisions by the Secretary of State regarding referendum petitions under the mandatory self-executing provisions of N.D. Const. art. III, §§ 6 and 7. *See Husebye v. Jaeger,* 534 N.W.2d 811, 813 (N.D. 1995); *Municipal Servs. Corp. v. Kusler,* 490 N.W.2d 700, 701–02 (N.D.1992). Under those provisions, the Secretary of State's responsibilities are limited to the form and the sufficiency of the petition. N.D. Const. art III, §§ 2 and 6. *See also* N.D.C.C. §§ 16.1–01–09 and 16.1–01–10. We have described those limited responsibilities as ministerial in nature. *Haugland v. Meier,* 335 N.W.2d 809, 811 (N.D.1983); *McCarney v. Meier,* 286 N.W.2d 780, 783 (N.D.1979). The Secretary of State's limited responsibilities under those mandatory constitutional provisions do not include the authority to review the substance or constitutionality of the measure. *Municipal Servs.,* 490 N.W.2d at 705–06; *Preckel v. Byrne,* 62 N.D. 634, 642–43, 244 N.W. 781, 784–85 (1932); *Anderson v. Byrne,* 62 N.D. 218, 228–32, 242 N.W. 687, 691–93 (1932). *See also State ex rel. Gammons v. Shafer,* 63 N.D. 128, 142–45, 246 N.W. 874, 879–80 (1933) (holding provision of voter-approved initiated measure at issue in *Preckel* unconstitutional in subsequent appeal in mandamus proceeding).

[¶ 11] Under N.D. Const. art. VI, § 2, this Court also has discretionary authority to exercise original jurisdiction to issue remedial writs as may be necessary to properly exercise its jurisdiction. *RE-*

*CALLND v. Jaeger,* 2010 ND 250, ¶ 7, 792 N.W.2d 511; *Bolinske v. Jaeger,* 2008 ND 180, ¶ 4, 756 N.W.2d 336; *Kelsh v. Jaeger,* 2002 ND 53, ¶ 2, 641 N.W.2d 100; *State ex rel. Kusler v. Sinner,* 491 N.W.2d 382, 384 (N.D.1992); *State ex rel. Wefald v. Meier,* 347 N.W.2d 562, 564 (N.D.1984). Under that constitutional provision, we determine in the first instance whether or not a proceeding is within our original jurisdiction. *State ex rel. Wefald,* at 564. In *State ex rel. Wefald,* at 564, we outlined the parameters for our discretionary exercise of original jurisdiction:

> It is well settled that the power of this court to issue writs in the exercise of its original jurisdiction extends only to those cases in which the question presented is *publici juris,* wherein the sovereignty of the State, the franchises or prerogatives of the State, or the liberties of its people are affected. *State ex rel. Link v. Olson,* 286 N.W.2d 262 (N.D. 1979). To warrant the exercise of this court's original jurisdiction, the interests of the State must be primary, not incidental, and the public, the community at large, must have an interest or right which may be affected. *State ex rel. Vogel v. Garaas,* 261 N.W.2d 914, 916 (N.D.1978).

[¶ 12] In *State ex rel. Wefald,* 347 N.W.2d at 564–65, we exercised our discretionary original jurisdiction in a dispute between two public officials—the Attorney General and the Secretary of State—regarding each entity's authority for preparation of a ballot statement for a referendum. We explained:

> Involved here is the process of referendum whereby the people, through the exercise of their right to vote, determine the laws under which they will be governed. Few matters encompass more public interest than this process which reserves unto the people the power to

govern themselves. See *Dawson v. Tobin,* 74 N.D. 713, 24 N.W.2d 737 (1946). This dispute encompasses an important and fundamental step in the referendum process. We conclude, therefore, that this is a matter of public interest which warrants our exercise of original jurisdiction.

*State ex rel. Wefald,* at 564.

[¶ 13] Although this Court is required by the constitution to review decisions by the Secretary of State regarding the form and sufficiency for placement of referendum measures on an election ballot, we conclude those mandatory provisions for original jurisdiction do not apply to this case because the Board does not assert the Secretary of State has improperly performed the ministerial functions regarding the form and sufficiency of the referendum petition. Under the circumstances in this case, however, we conclude it is appropriate to exercise our discretionary original jurisdiction under N.D. Const. art. VI, § 2.

[¶ 14] We have recognized "[t]he right to initiate and refer laws is part of the fabric of our liberty as North Dakotans [and t]he people of North Dakota—through the state constitution—have reserved to themselves this check on the legislative process." *Thompson v. Jaeger,* 2010 ND 174, ¶ 1, 788 N.W.2d 586. We have also recognized "the Legislative Assembly and the people are in effect coordinate legislative bodies with coextensive legislative power; a law enacted by one has no superior position as a rule of conduct over one enacted by the other; a law enacted by one is subject to the same rules of construction and the same tests of constitutionality as one enacted by the other." *State v. Houge,* 67 N.D. 251, 258, 271 N.W. 677, 680 (1937). When the people act in their legislative capacity through an initiated or a referendum measure, they can no more transgress the constitution than can

the legislature. *Id.* at 259, 271 N.W. at 680.

[¶ 15] The Board is a constitutional body within the executive branch of government. *Nord v. Guy*, 141 N.W.2d 395, 402 (N.D.1966). The Attorney General's petition on behalf of the Board and the responses in this proceeding raise legal issues regarding the Board's constitutional authority over UND juxtaposed against the legislature's authority regarding institutions of higher education and the peoples' authority to refer legislation as a coequal and coordinate legislative entity. These issues raise questions about the allocation of power among the legislature, the people, and the Board. The interests of the governmental entities and the people reflect an indisputable tension involving the limits of each entity's constitutional authority. *See Medical Arts Clinic, P.C. v. Franciscan Initiatives, Inc.*, 531 N.W.2d 289, 294 (N.D.1995) (explaining that system of separate but equal branches of government with its checks and balances sometimes needs fine tuning when there is disruptive disharmony between the branches).

[¶ 16] In the context of proceedings involving this Court's mandatory original jurisdiction, we have said the Secretary of State may not pass on the substance or constitutionality of an underlying proposed initiated or referred measure, or the ramifications of the measure. *See Municipal Servs.*, 490 N.W.2d at 702, 705–06; *Preckel*, 62 N.D. at 642–43, 244 N.W. at 784–85; *Anderson*, 62 N.D. at 228–32, 242 N.W. at 691–93. However, we have previously exercised our discretionary original jurisdiction to address constitutional ramifications of referendum measures. *State ex rel. Walker v. Link*, 232 N.W.2d 823, 824–25 (N.D.1975). *See also State ex rel. Wefald*, 347 N.W.2d at 564 (exercising discretionary original jurisdiction to resolve referen-

dum dispute between Attorney General and Secretary of State). In *State ex rel. Walker*, at 824–25, after the Attorney General was asked to secure a writ of certiorari and refused, a private citizen petitioned this Court to exercise its discretionary original jurisdiction in a dispute involving a referendum petition for the legislative appropriation for UND. This Court explained the questions raised in the private citizen's application involved the sovereignty and prerogatives of the State and warranted this Court's exercise of discretion to hear and decide issues involving the referral of the legislative appropriation for UND. *Id.* at 825. This Court held "[n]either the Legislature nor the people can, without a constitutional amendment, refuse to fund a constitutionally mandated function." *Id.* at 826. Although *State ex rel. Walker* did not involve a writ directed to the Secretary of State, the effect of this Court's decision precluded the Secretary of State from placing an unconstitutional referendum measure on the election ballot. *See* 1977 N.D. Sess. Laws ch. 595 (citing Attorney General Opinion that as result of *State ex rel. Walker* and *State ex rel. Askew v. Meier*, 231 N.W.2d 821 (N.D.1975), a vote on the referred measure would be ineffective to accomplish any practical legal result and referred measure was not placed on ballot). *See also* 1975 N.D. Op. Att'y Gen. 75–50 from Attorney General Allen I. Olson to Secretary of State Ben Meier. This Court's discretionary original jurisdiction for issues involving referendum petitions is not precluded by this Court's mandatory jurisdiction to review the Secretary of State's decisions under N.D. Const. art. III. *See State ex rel. Wefald*, 347 N.W.2d at 564–65; *State ex rel. Walker*, 232 N.W.2d at 825.

▆▆ [¶ 17] This proceeding does not involve a petition by a private citizen to exercise our discretionary original jurisdic-

tion. Rather, the Attorney General, on behalf of the Board, has petitioned this Court to exercise our discretionary original jurisdiction and issue a writ prohibiting another governmental official, the Secretary of State, from placing a referendum measure on the 2012 primary election ballot. The Attorney General is the principal law officer of the state with duties and authorities coextensive with the public legal affairs of the whole community. *McCue v. Equity Co-op. Pub. Co.,* 39 N.D. 190, 204, 167 N.W. 225, 230 (1918). The Legislative Assembly has also intervened in this proceeding. The Attorney General's petition, brought on behalf of the Board against the Secretary of State, and the posture of the issues raised in this proceeding raise fundamental questions involving the prerogatives of the State and the sovereign rights of its people, which are of statewide interest and go to core issues involving the limits of governmental authority in the context of the Board's authority to decide the name and logo for UND's intercollegiate athletic teams. The Attorney General, on behalf of the Board, in effect seeks a declaration on the constitutionality of N.D.C.C. § 15–10–46. The Secretary of State has now approved the referendum petition for placement on the June 2012 primary election ballot. Here, unlike the proposed initiated measures at issue in *Municipal Servs.,* 490 N.W.2d at 705–06; *Preckel,* 62 N.D. at 642–43, 244 N.W. at 784–85; and *Anderson,* 62 N.D. at 228–32, 242 N.W. at 691–93, the immediate effect of the submission of the referendum petition has suspended the operation of Senate Bill 2370, which reinstates N.D.C.C. § 15–10–46 as law and presents a justiciable issue sufficient to warrant the exercise of our discretionary original jurisdiction. *See State ex rel. Wefald,* 347 N.W.2d at 564–65.

[¶ 18] A majority of this Court concludes the posture of the issues raised in this proceeding satisfy the requirements for the exercise of its discretionary original jurisdiction under *State ex rel. Wefald,* at 564–65 and *State ex rel. Walker,* 232 N.W.2d at 825. Under N.D. Const. art. VI, § 4, however, this Court "shall not declare a legislative enactment unconstitutional unless at least four of the members of the court so decide." Although a majority of this Court would exercise its discretionary original jurisdiction and consider the underlying constitutional issue about the Board's authority over UND, two members of this Court have concluded this is not an appropriate case to exercise its discretionary original jurisdiction. As a result, there are not enough members of this Court willing to decide the constitutional issue at this time.

[¶ 19] We therefore do not address the constitutional issue, and we decline to enjoin the Secretary of State from placing the referendum measure on the June 2012 primary election ballot.

[¶ 20] DALE V. SANDSTROM and MARY MUEHLEN MARING, JJ., concur.

KAPSNER, Justice, concurring in the result.

[¶ 21] I concur in the result denying the injunctive relief requested. I believe it is improper, under the circumstances, to take this matter from the voters of North Dakota. Nowhere in the submissions to this Court has any party suggested the Secretary of State has failed to properly perform his constitutional duties to refer a legislative measure to the voters of North Dakota. There is no basis asserted by any party to invoke the mandatory original jurisdiction of this Court.

[¶ 22] The State Board of Higher Education asks us to exercise our discretionary jurisdiction because by referring legisla-

tion to the voters which repeals a statute, the repealed statute becomes effective by operation of N.D. Const. art. III, § 5, until the matter is decided by the voters. The Board asserts that the underlying statute is unconstitutional and assumes the outcome of the vote on the referendum. Under the circumstances, addressing the merits of the Board's contentions would constitute an advisory opinion in contravention of the reserved powers of the people.

[¶ 23] The Legislative Assembly of North Dakota enacted House Bill 1263, which provided:

The intercollegiate athletic teams sponsored by the university of North Dakota shall be known as the university of North Dakota fighting Sioux. Neither the university of North Dakota nor the state board of higher education may take any action to discontinue the use of the fighting Sioux nickname or the fighting Sioux logo in use on January 1, 2011. Any actions taken by the state board of higher education and the university of North Dakota before the effective date of this Act to discontinue the use of the fighting Sioux nickname and logo are preempted by this Act. If the national collegiate athletic association takes any action to penalize the university of North Dakota for using the fighting Sioux nickname or logo, the attorney general shall consider filing a federal antitrust claim against that association.

The bill was signed by the Governor on March 15, 2011, and filed with the Secretary of State on March 15, 2011. This bill was codified as N.D.C.C. § 15–10–46. It became effective August 1, 2011. It is the underlying statute and is *not* the subject of the referendum.

[¶ 24] Rather, in special session the Legislative Assembly enacted Senate Bill 2370, which provides:

SECTION 1. UNIVERSITY OF NORTH DAKOTA ATHLETIC NICKNAME AND LOGO. Neither the state board of higher education nor the university of North Dakota may adopt or implement an athletic nickname or corresponding logo before January 1, 2015.

SECTION 2. REPEAL. Section 15–10–46 of the North Dakota Century Code is repealed.

SECTION 3. EFFECTIVE DATE. This Act becomes effective on December 1, 2011.

The Governor signed the bill on November 9, 2011. Senate Bill 2370 is the legislation that is referred to the voters.

[¶ 25] The chief concern for the exercise of our original jurisdiction under N.D. Const. art. III, §§ 6, 7, is that the Secretary of State properly perform the function of certifying petitions to refer legislation to the voters of North Dakota. *RECALLND v. Jaeger*, 2010 ND 250, ¶¶ 24–26, 792 N.W.2d 511; *Husebye v. Jaeger*, 534 N.W.2d 811, 813 (N.D.1995); *Mun. Servs. Corp. v. Kusler*, 490 N.W.2d 700, 701–02 (N.D.1992); *Lips v. Meier*, 336 N.W.2d 346, 348 (N.D.1983); *Haugland v. Meier*, 335 N.W.2d 809, 811 (N.D. 1983). The Board has not asserted the Secretary of State has improperly performed this function. The Board does not assert the referral petition itself is unconstitutional under our state constitution, *State ex rel. Walker v. Link*, 232 N.W.2d 823, 824 (N.D.1975); *State ex rel. Gammons v. Shafer*, 63 N.D. 128, 132, 246 N.W. 874, 875 (1933), or under the federal Constitution, *State ex rel. Askew v. Meier*, 231 N.W.2d 821, 823 (N.D.1975), except by reference to N.D.C.C. § 15–10–46. The Board only alleges: "Because N.D.C.C. § 15–10–46 is unconstitutional, the Referendum Measure, which temporarily revives N.D.C.C. § 15–10–46 and, if

passed, will result in the repeal of SB 2370, is likewise unconstitutional."

[¶ 26] The Board asks us to take the matter from the voters on its assertion that a statute enacted by the Legislative Assembly, and subsequently repealed, is unconstitutional. Article III of the North Dakota Constitution articulates the powers reserved to the people. Section 1 of Article III provides: "the people reserve the power ... to approve or reject legislative Acts, or parts thereof, by the referendum.... This article is self-executing and all of its provisions are mandatory. Laws may be enacted to facilitate and safeguard, but not to hamper, restrict, or impair these powers." The decisions of this Court have acknowledged the importance of these reserved constitutional powers. "[W]e are guided by the principle that referendum provisions in the constitution must be liberally construed, and any doubt should be resolved in favor of the exercise of this right by the people." *Husebye*, 534 N.W.2d at 814 (citing *McCarney v. Meier*, 286 N.W.2d 780, 787 (N.D.1979)).

[¶ 27] When the voters exercise their vote, they too will be acting in a legislative capacity. *Hernett v. Meier*, 173 N.W.2d 907, 915 (N.D.1970).

> Under this constitutional provision [initiative and referendum provision of previous constitution], the Legislative Assembly and the people are in effect coordinate legislative bodies with coextensive legislative power; a law enacted by one has no superior position as a rule of conduct over one enacted by the other; a law enacted by one is subject to the same rules of construction and the same tests of constitutionality as one enacted by the other.

*State ex rel. Eckroth v. Borge*, 69 N.D. 1, 10, 283 N.W. 521, 525 (1939) (quoting *State v. Houge*, 67 N.D. 251, 258, 271 N.W. 677, 680 (1937)).

[¶ 28] If the voters would exercise their vote in the manner the Board appears to fear, then the issue of whether N.D.C.C. § 15–10–46 is unconstitutional can be adjudicated. However, this Court has indicated that asserting a statute is unconstitutional is not alone sufficient for this Court to take original discretionary jurisdiction. *Mun. Servs. Corp.*, 490 N.W.2d at 706; *State ex rel. DeKrey v. Peterson*, 174 N.W.2d 95, 100 (N.D.1970).

[¶ 29] In *Municipal Services Corp.*, this Court was similarly asked to exercise original jurisdiction to determine the constitutionality of a statute, but declined on the basis the matter was not ripe for review because the voters had not acted. 490 N.W.2d at 706. *See also Anderson v. Byrne*, 62 N.D. 218, 229, 242 N.W. 687, 691–92 (1932). In this case, the statute referred to the voters repeals N.D.C.C. § 15–10–46. If the voters were to approve the repealer action, the statute attacked by the Board would no longer exist. When one possible outcome of a vote is to eliminate the very statute under attack, there is no reason for this Court to exercise its discretionary jurisdiction under the high bar that has been set for such intervention, as discussed in the separate concurring opinion of Justice Crothers. *See Kelsh v. Jaeger*, 2002 ND 53, ¶ 2, 641 N.W.2d 100.

[¶ 30] In *Anderson*, 62 N.D. at 221, 242 N.W. at 688, petitioners asked this Court to enjoin the Secretary of State from placing an initiated measure on the ballot on the grounds that the measure was unconstitutional. This Court declined to interfere with the initiative process, citing with approval the decision of the Oregon Supreme Court in *State ex rel. Carson v. Kozer*: "The courts, therefore, can no more prevent, when all statutory requirements have been complied with, the people from voting upon a proposed initiative measure, than it could prevent the Legisla-

tive Assembly, when convened, from voting upon the same measure." *Anderson,* 62 N.D. at 232, 242 N.W. at 693 (quoting *State ex rel. Carson v. Kozer,* 126 Or. 641, 270 P. 513, 515 (1928)).

[¶ 31] Construing the referendum powers under the similar provisions of the prior North Dakota Constitution, as it applied to a repealer statute, this Court noted that our state constitution does not restrict the power of the people when dealing with a repealer statute, because to do so would hamper, restrict, or impair those powers:

> This language is clear and specific. The scope of the power of the referendum as here stated is as broad as the power of the legislature to enact laws. It is stated specifically and emphatically that *the people "reserve the power ... to approve or reject at the polls any measure or any item, section, part or parts of any measure enacted by the legislature."* The language used clearly evidences an intention and purpose that no enactment by the legislature and no part of any enactment by the legislature is excepted or withdrawn from the operation of the power of the referendum. Nothing is said in the constitutional amendment which in any manner limits the purpose and scope of the power of the referendum as thus first clearly and specifically declared. Indeed, there is no contention that anything said in the constitution limits the power of the referendum or prevents it from being invoked against any measure enacted by the legislature and against any and every part of any measure enacted by the legislature.

*Dawson v. Tobin,* 74 N.D. 713, 731, 24 N.W.2d 737, 745 (1946) (emphasis in original).

[¶ 32] This matter is distinctly unlike *State ex rel. Wefald v. Meier,* where recognizing the high importance of the people's referendum power, this Court acted to *facilitate* the exercise of that power by settling a dispute as to the *form* of the ballot. 347 N.W.2d 562, 566 (N.D.1984). This Court did not, however, act in an advisory capacity to opine about the outcome of the people's vote. In *Wefald,* this Court addressed process; here the Board asks this Court to address outcome. The distinction is critical as to why it is inappropriate to address the merits of the constitutional argument at this time. In *Wefald,* this Court noted:

> It is clear from our review of the constitutional provisions and our prior cases that the referendum is the means by which the legislative power is reserved by the people. It is a part of the legislative process which is not complete until the time for filing referral petitions has passed, or the measure has been either rejected or approved by the voters at an election having the referred measure on the ballot.

*Id.*

[¶ 33] It is not insignificant that the Attorney General, on behalf of the Board, seeks a declaration that N.D.C.C. § 15-10-46 is unconstitutional, but neither is it determinative. In *Langer v. State,* 69 N.D. 129, 154-55, 284 N.W. 238, 252 (1939), this Court declined to issue a declaratory judgment at the request of the Governor and several other state officials because to do so would be to issue an impermissible advisory opinion:

> The debates of the Constitutional Convention leave no doubt that it was the deliberate judgment of the framers of the State Constitution that Judges of the Supreme Court, as part of their official duties, should not be required, or authorized, to give advisory opinions. So, in this State, it is not a matter of choice whether the Judges of the Su-

preme Court shall, or shall not, give advisory opinions.

[¶ 34] Similarly, in *State ex rel. Aamoth v. Sathre*, 110 N.W.2d 228 (N.D.1961), this Court was asked to declare unconstitutional the unfinished work of an apportionment group under allegations its proposal would apportion the state House of Representatives in an unconstitutional manner. The apportionment group was:

> a constitutionally created legislative body that acts under powers conferred upon it by Section 35 of the North Dakota Constitution as a part of the independent, coordinate legislative branch of the State government, and that it has not yet completed its work but still is acting in the process of discharging the legislative duties imposed on it by such constitutional provision.

*Aamoth*, 110 N.W.2d at 231. This Court firmly rejected a constitutional challenge to an incomplete legislative process, reiterating the holding from *Anderson*:

> This court has heretofore held that it is no part of the judicial function to interfere with the constitutional processes of legislation, and that it will not entertain a suit to test the constitutionality of a proposed act of the Legislature on the ground that, if such act is enacted, it will interfere with the constitutional rights of the litigant.

*Id.* at 230. *See also Wefald*, 347 N.W.2d at 566.

[¶ 35] The Board argues the issue of the statute's constitutionality is not advisory because even though N.D.C.C. § 15–10–46 was repealed by the Legislative Assembly, it was revived by operation of N.D. Const. art. III, § 5, when the referendum petition was submitted. That is true, but only with certainty until the vote on the referred measure. "An initiated or referred measure which is approved shall become law thirty days after the election, and a referred measure which is rejected shall be void immediately." N.D. Const. art. III, § 8. Therefore, any determination this Court makes on the constitutionality of N.D.C.C. § 15–10–46, will be an advisory opinion on the people's vote.

[¶ 36] This Court has exercised its jurisdiction where the constitutional authority of the people to act did not exist. *RECALLND*, 2010 ND 250, ¶¶ 6–7, 792 N.W.2d 511; *Walker*, 232 N.W.2d at 826–27; *Askew*, 231 N.W.2d at 825. It has also acted in situations of urgency. *Wefald*, 347 N.W.2d at 564.

[¶ 37] It is clear that the constitutionality of N.D.C.C. § 15–10–46, the statute asserted to be a problem, is not a matter of urgency. If it were so, the Board would have challenged its constitutionality, as it could have done, immediately upon its signature by the Governor on March 15, 2011, one year ago, or any time thereafter. The fact that it did not do so until now indicates this is not a matter of urgency.

[¶ 38] I concur in denying the injunctive relief requested.

[¶ 39] Carol Ronning Kapsner

CROTHERS, Justice, concurring in the result.

[¶ 40] I agree this is not a proper case for exercising the Court's mandatory original jurisdiction. I also agree with the majority's result of denying the Board's requested relief. However, on the latter issue, we arrive at our common conclusion by significantly different means.

[¶ 41] The Board has petitioned for exercise of this Court's mandatory original jurisdiction under N.D. Const. art. III, §§ 6 and 7. The majority holds we should not, and I agree. Majority Opinion at ¶ 13.

[¶ 42] The Board also seeks to invoke this Court's discretionary original jurisdiction. N.D. Const. art. VI, § 2. A quorum majority but not a constitutional majority of this Court believes we should do so. Majority Opinion at ¶¶ 1, 18. I respectfully disagree.

[¶ 43] We exercise our discretionary original jurisdiction in limited circumstances. This Court has stated,

"Under N.D. Const. art. VI, § 2, this Court has authority to exercise original jurisdiction and to issue remedial writs necessary to properly exercise its jurisdiction. The power vested in this Court to issue original writs is discretionary and may not be invoked as a matter of right. It is well-settled that our power to exercise original jurisdiction extends only to those cases in which the questions presented are *publici juris* and affect the sovereignty of the state, the franchises or prerogatives of the state, or the liberties of its people. To warrant the exercise of this Court's original jurisdiction, the interest of the state must be primary, not incidental, and the public—the community at large—must have an interest or right that may be affected."

*Kelsh v. Jaeger*, 2002 ND 53, ¶ 2, 641 N.W.2d 100 (internal citations omitted).

[¶ 44] The Board argues in its brief and the Sponsoring Committee argues throughout that UND's potential continuing use of the "Fighting Sioux" nickname and logo is a matter of important public concern warranting our intervention. I neither doubt nor ignore the Board's claim that continuing controversy over the nickname and logo may be affecting the University's "educational environment and reputation, as well as the financial viability of its sports program." Nor do I discount the Sponsoring Committee's earnest beliefs and efforts behind seeking to keep the nickname and logo. However, the Board's concerns about future consequences of the legislation fall short of meeting the legal threshold before this Court can act. So too, the Committee's concerns about preserving the nickname and logo fail to clear the bar. That threshold requires a question "affect[ing] the sovereignty of the state, the franchises or prerogatives of the state, or the liberties of its people" before our discretionary jurisdiction can be exercised. *Kelsh*, 2002 ND 53, ¶ 2, 641 N.W.2d 100.

[¶ 45] Perhaps recognizing the logo and nickname controversy would not meet the legal threshold for this Court's intervention, the Board opened oral argument stating, "The issue before the Court today is not whether UND's current nickname and logo should continue. The issue is who has the constitutional authority to make that determination." In turn, the majority correctly explains this Court has exercised discretionary original jurisdiction in prior separation of governmental powers disputes. Majority Opinion at ¶¶ 15–16. However, I find no case where this Court has enjoined the Secretary of State from placing a referred or an initiated measure on the ballot under the circumstances present in this case. I submit we should not do so now.

[¶ 46] Historically, this Court has been selective of the type of cases accepted in the exercise of original jurisdiction. In 1956, former North Dakota Supreme Court Chief Justice Burke wrote the following:

"The Supreme Court has always assumed jurisdiction of controversies concerning the title to a state office. It has accepted jurisdiction in matters concerning the right of a candidate to have his name printed upon the ballot in statewide elections. Among other controversies within the original jurisdiction are

those concerning the right of franchise, the right of state officers to their pay, and the jurisdictional foundation of the orders of state boards and commissions.

"Some of the controversies which the Court has refused to accept are those concerning the title to an office in a political party, those concerning the division of a county, the matter of the change of location of a county seat, taxpayers' actions, and questions concerning the discharge of the employees of a public board."

Thomas J. Burke, *The Prerogative Jurisdiction of the Supreme Court*, 32 N.D. L.Rev. 199, 204 (1956) (footnotes omitted).

[¶ 47] This Court generally has continued on the path described by Chief Justice Burke, more recently exercising discretionary original jurisdiction in a conflict between constitutional offices. *See State ex rel. Link v. Olson*, 286 N.W.2d 262, 266 (N.D.1979) (governor's constitutional challenge to legislative change to scope and function of lieutenant governor's duties). Disputes over the exercise of the voting franchise also have warranted exercise of this Court's original jurisdiction. *See Kelsh*, 2002 ND 53, ¶ 3, 641 N.W.2d 100 (jurisdiction exercised in legislative redistricting ballot dispute); *State ex rel. Kusler v. Sinner*, 491 N.W.2d 382, 384 (N.D. 1992) (discretionary original jurisdiction exercised over question about "interpretation of the statutory procedure for, and the timing of, a special election to fill a vacancy in the office of United States Senator from North Dakota"); *State ex rel. Wefald v. Meier*, 347 N.W.2d 562, 564 (N.D.1984) (dispute between the attorney general and the Secretary of State over a referral ballot description). This Court also has exercised jurisdiction to determine whether a constitutional officer has acted beyond his authority. *See State ex rel. Olson v. Welford*, 65 N.D. 522, 260 N.W. 593 (1935)

(Court reviewed governor's jurisdiction in removing the highway commissioner); *State ex rel. Wehe v. Frazier*, 47 N.D. 314, 182 N.W. 545 (1921) (Court reviewed governor's jurisdiction in removing Workmen's Compensation Bureau commissioner).

[¶ 48] . Viewed from a distance, these citations show we have exercised discretionary original jurisdiction in disputes with general attributes similar to those in this case. However, a closer reading of our case law reveals that we have declined to intervene in the situations most similar to those here. *See Municipal Servs. Corp. v. Kusler*, 490 N.W.2d 700, 706 (N.D.1992) (denying relief in a constitutional attack on initiated measure as premature and advisory); *Preckel v. Byrne*, 62 N.D. 634, 244 N.W. 781 Syll. 3 (1932) ("[T]his court will not examine the proposed measure to test the constitutionality of the substance of the act proposed."); *Anderson v. Byrne*, 62 N.D. 218, 242 N.W. 687, 688 (1932) (refusing to enjoin Secretary of State from placing allegedly unconstitutional initiated measure on ballot).

[¶ 49] Rather than follow *Municipal Servs. Corp., Preckel* and *Anderson*, the majority would reach a different conclusion. The majority's position warrants a more in-depth consideration of several cases relied on by it or the parties.

[¶ 50] The first is *State ex rel. Walker v. Link*, 232 N.W.2d 823 (N.D.1975). The *Walker* decision is relied on in the majority opinion for the proposition that "we have previously exercised our discretionary original jurisdiction to address constitutional ramifications of referendum measures." Majority Opinion at ¶ 16. While that broad statement is of course true, *Walker* was not an action to enjoin the Secretary of State from placing the referendum on the ballot. 232 N.W.2d at 824. Rather, in *Walker* the statute appropriat-

ing UND's budget was referred. *Id.* Filing of the referral petitions suspended UND's funding. *Id.* at 826. The North Dakota Emergency Commission subsequently restored funding for UND's operations. *Id.* at 824. A lawsuit was filed, asking this Court to exercise its original jurisdiction to annul the Emergency Commission's appropriation. *Id.* The issue in *Walker* was "whether a referral petition filed with the Secretary of State suspends a legislative appropriation to fund a constitutionally mandated function." *Id.* at 825. This Court held the constitutional provision to suspend the referred law was in conflict with the provision requiring funding of mandated functions. *Id.* at 826. The conflict was resolved in favor of funding the constitutionally mandated function, no further relief was provided and the action was dismissed. *Id.* at 827.

[¶ 51] *Walker* is different from the present case for a host of reasons. Several important ones include that *Walker* addressed only the question whether funding of a constitutionally mandated function could be suspended on the filing of referral petitions. That question went to the constitutionality of the referral process itself. Here, no such challenge exists because no one is suggesting repeal of N.D.C.C. § 15–10–46 is constitutionally impermissible. In addition, the relief requested in *Walker* was to enjoin the Emergency Commission. Neither the office of the Secretary of State nor the Secretary's placement of the referral on the ballot were at issue. *Walker* therefore provides no guidance on answering the question whether this Court should halt a ballot listing when the statute targeted by referral is alleged to be unconstitutional but the referral process itself is not being attacked.

[¶ 52] The second case warranting further consideration is *RECALLND v. Jaeger*, 2010 ND 250, 792 N.W.2d 511. The

Board argues *RECALLND* should control our disposition here because the case was decided under the North Dakota Constitution and because it had the effect of keeping a voter-initiated recall proceeding from appearing on the ballot. But again, careful examination shows *RECALLND* does not lead us to the Board's requested result.

[¶ 53] The issue in *RECALLND* was whether the Secretary of State should be ordered to approve a petition to recall a United States Senator. 2010 ND 250, ¶ 2, 792 N.W.2d 511. This Court rejected the requested relief because the proffered "petition [did] not meet the constitutional requirements of a valid recall petition." *Id.* at ¶ 26. Doing so, the holding in *RECALLND* was in line with the holding in *Walker* because the underlying petition process was outside that permitted by the Constitution. Without a similar claim here that the referral itself is unconstitutional, our decision in *RECALLND* is not helpful to the Board.

[¶ 54] The third case is *State ex rel. Askew v. Meier*, 231 N.W.2d 821 (N.D. 1975). In *Askew*, petitions were filed seeking to refer legislative approval of the so-called "Equal Rights Amendment" to the United States Constitution. 231 N.W.2d at 822. Relief was sought from this Court to prevent the Secretary of State from placing the referral question on the ballot. *Id.* at 823. This Court enjoined the Secretary of State from placing the referral on the ballot because "an attempt to reverse the legislative ratification through the referendum process [was] forbidden by Federal constitutional law[.]" *Id.* at 825. Therefore, in *Askew*, as in *Walker* and *RECALLND*, the matter did not proceed to a public vote because the underlying referral or recall petition itself was unconstitutional. By contrast, no claim is made here that referral of

N.D.C.C. § 15–10–46 is unconstitutional, so neither the rationale nor the holdings in those cases help guide us to a similar result.

[¶ 55] Reading these and our other original jurisdiction cases together, I conclude the Court's intervention at this time would be unprecedented. Intervention now also would be ill-advised because of the important competing and conflicting interests between the Board's and the Legislature's separation of constitutional powers on the one hand and the right of the people to refer legislation on the other. Therefore, although due to far different reasons, I agree with the result reached by the majority in dismissing the petition without prejudice to the ability to revisit the question if it is not rendered moot by voting on the referred measure in June 2012.

[¶ 56]   Daniel J. Crothers